No. 30,040.

Blanche Spradling, John F. Bell, C. W. Bell, W. D. Bell, C. F. Bell, Clara Kilbourn and Bertha Nelson, *Appellants*, v. Charlie W. Hawk, *Appellee* and *Cross Appellant*.

(1 P. [2d] 268.)

Opinion filed July 3, 1931.

*G. W. Sawyer,* of Liberal, for the appellants.
*G. L. Light,* of Liberal, for the appellee.

The opinion of the court was delivered by

Sloan, J.: The plaintiffs brought an action in ejectment and partition. The court rendered a judgment from which both parties ap-

peal. The trial court made findings of fact and conclusions of law, which are as follows:

"FINDINGS OF FACT.

"Pursuant to request of counsel made at the trial that finding of fact be made in writing, the court finds from the evidence as follows:

"1. Amanda C. Bell died intestate on the 28th day of November, 1894, seized and possessed of the land in controversy in this action, to wit: The northwest quarter (NW¼) of section twenty-two (22), in township thirty-three (33), range thirty-five (35), in Stevens county, Kansas, subject to a mortgage for the principal sum of $626 executed by her and her husband, John A. Bell, on the 28th day of November, 1892, covering the land in question and 160 acres of additional land and bearing interest at the rate of ten per cent per annum.

"2. That said Amanda C. Bell left surviving her as her sole and only heirs at law, her husband, John A. Bell, and her children, the plaintiffs in this action.

"3. That the estate of the said Amanda C. Bell was solvent, but was never legally administered.

"4. That on or about the 18th day of August, 1900, the said John A. Bell paid the mortgage hereinbefore mentioned and the same was released of record, the amount so paid in satisfaction of said mortgage being $626 and interest at 10 per cent from date of Mrs. Bell's death.

"5. That default was made in the payment of taxes on said land for the years 1893 to 1897 inclusive, and on or about the 29th day of May, 1899, the said John A. Bell purchased the outstanding tax certificate on said land, paying therefor the sum of $94.57; and pursuant to such certificate, took a pretended tax deed on the land in question, which tax deed was filed for record on the 29th day of November, 1899.

"6. That on or about the 16th day of July, 1901, the said John A. Bell executed and delivered to one Willie Kronig a general warranty deed for said land and on the same date executed an instrument, in form, an administrator's deed, attempting to act as administrator of the estate of the said Amanda C. Bell, deceased, which deed purported to convey the land hereinbefore described to the said Willie Kronig, and which deed was made pursuant to an order of the probate court of Stevens county, Kansas, but no appointment of the said John A. Bell as such administrator was ever made.

"7. In addition to purchasing the tax-sale certificate hereinbefore mentioned the said John A. Bell paid taxes on said land on the dates and in the sums following, to wit: . . .

"8. Said John A. Bell died intestate in November, 1904, leaving as his sole and only heirs at law the plaintiffs in this action; that his estate was never administered, but was solvent and his property, the value of which does not appear, was divided among the plaintiffs.

"9. That on or about the 8th day of May, 1916, the said Willie Kronig executed and delivered to the defendant, Charlie W. Hawk, a general warranty deed for the land in question and the northeast quarter (NE¼) of the same section, and as a part of the consideration for said conveyance the said de-

fendant executed to the said Kronig a mortgage for the sum of $4,000, covering said one-half section of land, due five years from date. ·

"10. That at or about the time said mortgage became due the defendant paid to the said Willie Kronig, on said mortgage, the sum of $2,000 and procured an extension of time on the balance for a period of. two years, and on or about the 10th day of October, 1923, said defendant paid the balance due on said mortgage and the same was released of record on the 15th day of October, 1923.

"11. That during all of the time he owned said land the said Willie Kronig was a resident of the state of New Mexico and was absent from the state of Kansas.

"12. That said land was vacant and unoccupied during the period it was owned by the said Willie Kronig.

"13. That at the time said Willie Kronig purchased said land, and at all times up to and including the date of his conveyance to the defendant, he believed the warranty deed and the attempted administrator's deed executed by the said John A. Bell to him conveyed absolute title, and had no actual notice that the plaintiffs or anyone else had or claimed any interest therein.

"14. That during the time he owned said land the said Willie Kronig paid taxes thereon in the amounts and on the dates following, to wit: . . .

"15. That at the time the defendant purchased said land he had the abstract examined and the abstract so examined disclosed the condition of the title, but said defendant was advised that plaintiffs had no enforceable claims against said land and purchased the same for full value and in good faith.

"16. That some months after he purchased said land, in order to avoid the expense of an action to quiet title, the defendant took up with certain of the plaintiffs the question of obtaining from plaintiffs a quitclaim deed or deeds to perfect his title, and efforts were made from time to time by some of said plaintiffs to obtain such deeds from the other plaintiffs, but the matter dragged along without such deeds being obtained until the commencement of this action.

"17. That plaintiffs had no actual knowledge until they were asked for quitclaim deeds that they had any interest in the land in question.

"18. Since the purchase of said land the defendant has been in possession thereof and from time to time broken out and put into cultivation parts of said land, built fences thereon, raised and harvested crops thereon, and paid all taxes levied and assessed against the land, and the court finds that the rents and profits received from said land by defendant since his purchase thereof are equal to the sums expended by him for improvements, breaking and taxes.

"19. That at the date of the trial of this action, to wit, February 6, 1929, the ages of the plaintiffs were as follows: John F. Bell, 55; C. W. Bell, 53; W. D. Bell, 51; C. F. Bell, 47; Clara Kilbourn, 46; Blanche Spradling, 39; and Bertha Nelson, 37.          (Signed)     C. E. VANCE, *Judge pro tem.*"

"Conclusions of Law.

"1. The tax deed issued to John A. Bell was void for the reason that the same was not in the form prescribed by the statutes and for the further reason that as against the plaintiffs the said John A. Bell was disqualified to take such tax deed, and the only effect of said tax deed was to effect a redemption of said land from the taxes.

"2. The attempted administrator's deed, executed by said John A. Bell, was void for the reason that the said John A. Bell was not the duly appointed and qualified administrator of the estate of Amanda C. Bell, and for the further reason that proper steps were not taken to give the probate court jurisdiction to order such sale.

"3. The five-year statute of limitations prescribed by the code protects the holder of a void deed made by a duly appointed and qualified administrator, but does not protect the holder of a deed made by one who has not been legally appointed such administrator.

"4. The fifteen-year statute of limitations prescribed by the code does not protect the defendant in this case because of the absence and nonresidence of Willie Kronig during the period he owned the land.

"5. The conduct of the plaintiffs and their delay in instituting the action has not been such as to make the defense of laches effective in this case.

"6. The defendant is entitled to be subrogated to the rights of the holder of the mortgage discharged by John A. Bell and to have contribution from the plaintiffs for one-half of such proportion of the amount which would now be due on said mortgage as the area of the land in question bears to the total area of the land covered by said mortgage.

"7. The defendant is entitled to contribution from the plaintiffs for one-half of the amount paid by John A. Bell for the tax-sale certificate and of taxes paid by the said John A. Bell and Willie Kronig with interest from the respective dates of their payment at the rate of 12 per cent per annum.

"8. Subject to their duty to contribute to the amounts expended in satisfaction of the mortgage and for taxes as hereinbefore mentioned, plaintiffs are the owners of an undivided one-half interest in said land and the defendant is the owner of the other half, and plaintiffs are entitled to partition of said land.                 (Signed)     C. E. Vance, *Judge pro tem.*"

In view of the fact that the parties have both appealed, and to avoid confusion, we will refer to them in this opinion as plaintiffs and defendant.

It is contended by the plaintiffs that the court erred in findings of fact numbered six, thirteen, fifteen and eighteen. We have examined the evidence and find that there was substantial evidence fairly supporting these findings of fact. The probate court records and the administrator's deed are sufficient to support finding number six.

Finding number thirteen is supported by the evidence of Willie Kronig and the affidavit made by John A. Bell on July 22, 1901, and

the further fact that the plaintiffs made no claim to the land in question until 1917.

Findings numbered fifteen and eighteen are fully supported by the evidence of the defendant.

It is further contended by the plaintiffs that the court erred in conclusions of law numbered six, seven and eight, wherein the share of each of the plaintiffs was charged with its proportion of the mortgage and taxes paid by John A. Bell, and the taxes paid by Willie Kronig. The payment of the mortgage and taxes benefited the plaintiffs. If such payment had not been made their interest in the land would have long since been lost. They cannot in equity accept the benefit and reject the burden. Where, as in this case, the payment was made in good faith for the benefit of those who turned out subsequently to be vested with the title, their shares are chargeable with the proper proportion of the payment. When Bell conveyed to Kronig he acquired all the rights that were vested in Bell, and likewise the defendant acquired the rights vested in them by the conveyance to him.

It is urged by plaintiffs that since there was no contractual relation between the defendant and Bell, and Kronig, that he cannot be subrogated to their rights. Subrogation is a creature of equity and its purpose is to prevent injustice. It does not depend upon contract nor the absence of contract, but is predicated on the principle of natural justice.

In the case of *Olson v. Peterson,* 88 Kan. 350, 129 Pac. 191, this court said:

"Lands belonged to a husband and wife and were encumbered by a mortgage executed by them. After the death of the wife the husband paid the mortgage, and two years thereafter sold to one who purchased believing that he acquired full title. The heirs of the wife brought ejectment against the purchaser and recovered. *Held,* that the purchaser was entitled to be subrogated to the rights of the mortgagee and that the share of each of the heirs was properly chargeable with its proportion of the mortgage debt paid by the husband." (Syl. ¶ 5.)

The court correctly held that the share of each of the plaintiffs was chargeable with its proportion of the liens paid by Bell and Kronig.

The defendant contends that the court erred in conclusions of law numbered two and three, wherein it is held that the administrator's deed is void and that the five-year statute of limitations does not

protect the holder of a deed made by one who has not been regularly appointed administrator.

The court found as a fact that no appointment of John A. Bell as administrator was ever made. The finding was predicated on the probate court records which showed the absence of any appointment. This was sufficient to support the finding. (*Graden v. Mais,* 77 Kan. 702, 95 Pac. 412.)

The statute is:

"An action for the recovery of real property sold by executors, administrators or guardians, upon an order or judgment of a court directing such sale, brought by the heirs or devisees of the deceased person . . . within five years after the date of the recording of the deed made in pursuance of the sale." (R. S. 60-304.)

Defendant cites the case of *O'Keefe v. Behrens,* 73 Kan. 469, 85 Pac. 555, in which case a legally appointed administrator executed a deed and this court held that the statute applies to sales which are void for want of notice to the heirs of the proceedings upon which the deed is based. It will be noted, however, that the statute applies only to real property sold by executors, administrators or guardians, and unless there is an executor, administrator or guardian, as the case may be, regularly appointed, the statute has no application. The statute was enacted to protect against the irregularities and mistakes of executors, administrators or guardians, but lapse of time does not create the administrator. He can only come into being through the order of the court, and unless there is an administrator the deed will not be given validity through the statute of limitations.

It is next contended by the defendant that the doctrine of laches applies. Laches does not grow out of the mere lapse of time, but is founded upon the inequity of permitting the claim to be enforced. The failure to pay taxes or delay in asserting title will not defeat an action, unless there has been some change in the condition or relations of the property or the parties, which would cause prejudice to the adverse party, and for which there is no good excuse or explanation. (*Harris v. Defenbaugh,* 82 Kan. 765, 109 Pac. 681; *Dusenbery v. Bidwell,* 86 Kan. 666, 121 Pac. 1098.)

The court found that the land in question was vacant and unoccupied until it was conveyed to the defendant, and that the plaintiffs had no actual knowledge of their interest in the land until a request was made on them for a quitclaim deed by the defendant

about 1917, and since that time "the matter dragged along without such deeds being obtained until the commencement of this action." The delay in bringing the action did not cause any prejudice to the defendant or alter his condition.

The findings of fact are supported by substantial evidence and there is no error in the conclusions of law.

The judgment is affirmed.