## No. 36,297

BEN PRESTON, *Appellant*, v. R. H. SHIELDS, *Appellee*.

(156 P. 2d 543)

Opinion filed March 10, 1945.

*Albert L. Orr,* of Medicine Lodge, argued the cause, and *Jerry E. Driscoll,* of Russell, and *O. B. Martin,* of Oklahoma City, Okla., were on the briefs for the appellant.

*Oscar Ostrum,* of Russell, argued the cause for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to quiet the title to an oil and gas lease, for possession and an accounting of oil and gas produced. Defendant's demurrer to plaintiff's petition was sustained on the grounds the petition failed to state a cause of action and that the action was barred. From that ruling plaintiff appeals.

The suit is between the assignees of two separate oil and gas leases executed approximately thirteen years apart on the same quarter section of land and by the same landowners, John Letsch and his wife. The petition is voluminous. Various instruments attached thereto will not be analyzed in detail in making a summary of material allegations but will receive such attention later as a decision requires. The first lease was executed on June 25, 1921, to The Focks Drilling & Manufacturing Corporation and will be referred to as the Focks' or as the first lease. It was one of a block of leases made to Focks. The block comprised an area of approximately six miles by ten miles in Russell county. The leases were deposited in the Bunker Hill State Bank together with an escrow agreement which was signed by that bank and the lessee and was orally agreed to by the Letsches and other landowners in the block. We shall refer to the escrow holder as the bank. The primary term of the Focks' lease was five years and by its terms was made subject to the escrow agreement. A pertinent provision of the lease required the drilling of a test well within one year on the lease presently involved or on other lands in the community of that lease and within a radius of ten miles. The escrow provided:

"Whereas, party of the first part [Focks] desires to obtain leases on a block of acreage situated in Russell County, Kansas, Townships 13 and 14, Ranges 12 and 13, for the purpose of drilling a test well for oil and gas, party of the first part agrees to begin drilling operations for test well within ninety days from time block is completed, and continue operations until well is completed, unavoidable accidents excepted.

"Party of the second part [bank] agrees to keep possession of leases taken until party of the first part has erected derrick, places machinery and spudded

in test well. Party of the second part will then deliver all leases to party of the first part."

The escrow was recorded December 17, 1923. There was some delay in acquiring the leases on the entire block and the lessee obtained an extension from the Letsches on September 21, 1922, which reads:

"This is to certify that we the undersigned landowners of Russell County, Kansas, do hereby grant and extend the time for the commencement of a well on the block of which our leases are a part for a term of two years from date; this refers to the leases held in escrow by the Bunker Hill State Bank under contract between the undersigned parties and the Focks Drilling & Manufacturing Corporation.

"In consideration of the above stipulations, the Focks Drilling & Mfg. Corp. agrees to undertake the completing of said leasing of said block, and if successful, agrees to commence a test well on said block within the time herein provided.

"The undersigned landowners hereby further agree to deliver said leases to the order of the Focks Drilling & Mfg. Corp. immediately when test is spudded.

"If no well is commenced on said block of leases on or before September 21st, 1924, this contract shall become null and void, otherwise it shall remain in full force and effect as per former contract."

That agreement was deposited with the bank. March 4, 1924, Focks assigned to plaintiff, appellant, all rights in and to the escrow agreement. The assignment was recorded July 23, 1926. March 14, 1924, appellant drilled a well to the depth of approximately 600 feet on land within the block and within a radius of ten miles from the Letsches' land. Appellant made demand upon the cashier of the bank for the delivery of the leases covering the block of acreage. The demand was refused. Appellant set casing to a depth of 600 feet and made demand for the leases. The demand was refused.

In addition to the foregoing allegations the petition, in substance, further alleged:

M. K. Mathews, cashier of the bank, was the agent of the landowners, including the Letsches; Mathews fraudulently endeavored to obtain the leases in his own name or to otherwise acquire an interest in the mineral rights involved and in furtherance of his scheme wrote letters on October 2 and 29, both in 1922, evidencing his fraudulent intent; (copies of the letters were attached to the petition) in each of the years from 1925 to 1929, inclusive, plaintiff sent his various agents to the landowners within the entire block and demanded delivery of the leases; every demand was refused by all of them including the Letsches; (expenditures incurred in some

of these efforts were detailed) in 1940 plaintiff, through his attorney, made written demand for the delivery of the leases on all lessors including the Letsches; the demand was refused; by reason of such refusal to deliver the leases as provided in the escrow and extension thereof plaintiff was unable to proceed with the completion of the well; the landowners accepted a return of their leases from the bank; March 10, 1934, the Letsches and certain other royalty owners executed and delivered to J. E. Missimer an oil and gas lease covering the land in question; by a chain of assignments defendant by July 30, 1937, acquired the interest in and to this second lease on the Letsch land which he now claims; the refusal of the landowners, including the Letsches, and their agent, M. K. Mathews, to deliver the leases to plaintiff in compliance with his demands and the subsequent delivery of leases to others constituted a breach of contract on the part of the lessors.

The petition, in substance, further alleged:

Prior to the date defendant began drilling operations, plaintiff, by registered letter which defendant received May 5, 1937, advised defendant that he claimed this particular tract of land under an escrow agreement, which agreement had been recorded and defendant had actual knowledge of plaintiff's claim by reason of the notice; plaintiff was prevented from completing his well by reason of litigation which clouded his title and equitable ownership of the lease (the petition set forth the title of seventeen actions, sixteen of which were filed in Russell county between the dates of March 21, 1924, and November 8, 1940, and one action in the district court of the United States for the district of Kansas, first division).

The petition then states:

"The issues presented in the case at bar have never been tried or determined upon the merits. That in none of the litigation hereinabove referred to has there been a judicial determination affecting adversely the right, title, interest and claim of the plaintiff herein in and to the oil and gas leasehold estate claimed and owned by him on any of the property located within the block of acreage, including the property involved in this action. In a few instances, the plaintiff herein has executed releases of his interest in the oil and gas rights on certain tracts of land, or has signed and filed Disclaimers in some of the actions whereby he has voluntarily surrendered up his interests in the same, or where he has willingly permitted judgment to be entered while quieting title on the property as against his claim by agreement on small portions of the acreage located within the block and, also, outside of the block of acreage referred to."

The petition, in substance, further alleged:

Since the well was started in 1924 plaintiff has been able, ready and willing to complete the well and develop the block as provided by agreement but has been prevented from doing so by the former acts of the landowners, including Letsch, in refusing to deliver the leases, by executing subsequent leases and by the litigation referred to, which has clouded his title; plaintiff became the equitable owner of the mineral rights under the property involved by the performance of his agreement; any interest claimed by defendant is junior and inferior to that of plaintiff; during August, 1937, and subsequent thereto defendant drilled oil wells upon the property and produced oil and gas therefrom for which he has received vast sums of money; by reason of the facts alleged a trust has been created by operation of law; defendant is holding the proceeds from the sale of oil and gas produced as trustee for plaintiff except to the extent of expenditures incurred in drilling and producing the oil and gas; defendant has at no time repudiated or denied the existence of the trust created; plaintiff is entitled to an accounting for the profits realized by defendant.

Under the averments of the petition appellant claims six-eighths' interest in the oil and gas rights under the first, or Focks', lease, on the Letsch land. The exact extent of that interest is not in controversy. The question is whether appellant is entitled to prevail as to any interest.

Appellant argues the demurrer admits various alleged facts among which are: He became the equitable owner of the mineral rights; he has never been divested thereof; appellee had knowledge of that title before he began operations on the lease; appellee's rights are inferior to those of appellant; the subsequent lease and the continued litigation cloud appellant's title; there has been no judicial determination of the merits of the action against appellant; appellant, although willing to do so, has been prevented from developing the lease by the landowners and appellee; appellee became a trustee for appellant, the trust has not been repudiated and appellee is holding the moneys realized from production in trust for appellant.

In view of these alleged admissions on demurrer appellant urges the demurrer was erroneously sustained. It is, of course, elementary that a demurrer admits all facts well pleaded. It is the duty of the pleader to state the premises, the ultimate facts, in simple and concise language and the duty of courts to declare the conclusion. A general allegation of ownership of specific property may constitute the pleading of an ultimate fact. If, however, as in the instant case,

a party sets forth fully and in detail the specific facts upon which he predicated his alleged title, the additional general allegation of title and ownership is surplusage and constitutes a conclusion of the pleader which is not admitted on demurrer. (*Cummings v. Keach*, 146 Kan. 157, 68 P. 2d 1089; 41 Am. Jur., Pleading, §§ 16, 22.). And this rule is particularly applicable where detailed specific facts pleaded require a contrary conclusion.

In our summary of the petition we have stated the ultimate facts pleaded. That summary is sufficient to treat every contention made by appellant. It is unnecessary to comment at greater length concerning the various alleged facts which appellant claims are admitted by the demurrer. Some of them, as indicated, are clearly mere conclusions of law. Some of them, even if admitted, must be considered in connection with other allegations of the petition and the absence of certain allegations in order to determine whether appellant at this late date is entitled to the relief sought.

Appellee first insists the lease on the Letsch land expired by its own terms not later than September 21, 1924, notwithstanding the escrow and extension agreements for the reason that no well was commenced or rentals paid on that particular lease on or before that date. A determination of that contention would require a construction of the various instruments, including certain language employed in the Focks' lease, not heretofore set out. Assuming, without deciding, that appellee's contention is sound we prefer to base our decision on different grounds.

Appellant commenced a well within the block of acreage on March 14, 1924. Under his theory of the case he was entitled to a delivery of the leases from the bank on that date. Accordingly he then made a demand therefor, which was refused. His cause of action for specific performance of the contract or for damages for its breach accrued not later than the date the demand was refused. (*Parks v. Monroe*, 99 Kan. 368, 161 Pac. 638.) G. S. 1935, 60-306 provides:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

"*First.* Within five years: An action upon any agreement, contract or promise in writing.

. . . . . . . . . . . . .

"*Sixth.* An action for relief not hereinbefore provided for can only be brought within five years after the cause of action shall have accrued."

The instant action was not commenced until March 8, 1944.

While appellant does not specifically pray for a judgment directing specific performance of the contract that in reality is the substance of the relief sought. The equitable title claimed rests upon the pleaded contract. His cause of action for its breach accrued approximately twenty years ago. Whether the action be regarded as one at law or in equity it manifestly is too late.

What about the allegation of fraud? Appellant does not charge appellee with fraudulent conduct. He asserts the cashier of the bank was the agent of the landowners and that the cashier in 1922 was guilty of fraudulent conduct in the premises. He argues the cashier by fraudulent means endeavored to obtain the leases for his own use and benefit. If fraudulent conduct by the landowners, the cashier, or both, in 1922 prevented delivery of the leases in 1924 an action to obtain relief on that ground should have been commenced within two years from the discovery of the fraud. (G. S. 1935, 60-306 [*Third*].) Ignorance of fraud at the time of its alleged commission is not charged. Moreover a mere allegation of ignorance at the time of its commission, or later, would not suffice. A party is required to plead facts which disclose inability to discover the fraud by the exercise of reasonable diligence. (*Malone v. Young*, 148 Kan. 250, 81 P. 2d 23.) The instant petition does not meet those requirements.

Appellant alleges appellee began drilling on the lease in 1937 and has produced oil and gas therefrom in vast quantities. He contends appellee was and is a trespasser, that he is a trustee by operation of law and holds the proceeds from the sale of the minerals in trust for appellant.

Appellee did not commence drilling operations until approximately three years after the lease to defendant's assignor had been recorded. Appellee did not start drilling until approximately thirteen years after appellant's cause of action for relief, if he had any, against the landowners and the bank had accrued. Appellant had taken no steps, so far as the petition discloses, to be decreed the legal or equitable owner of the leases, or any of them. Furthermore if appellee properly ever could have been regarded as a trustee, such a relationship was clearly repudiated by him when he proceeded with drilling operations in 1937 notwithstanding the fact appellant had notified him in writing that he claimed to be the owner of the lease. Appellant, therefore, was fully advised in 1937 of appellee's adverse claim of title and ownership. Appellant's cause of action against

appellee accrued when the alleged trust was definitely repudiated by appellee in 1937. (*Staab v. Staab*, 158 Kan. 69, 75, 145 P. 2d 447, and cases therein cited.) If appellant desired to recover the oil which it is alleged appellee wrongfully produced and appropriated appellant had an action for wrongful conversion or its value. The statute of limitations on such an action ran in two years. (G. S. 1935, 60-306 [*Third*].)

What did appellant do in the face of these continued drilling operations? Did he assert his alleged title in some court of competent jurisdiction and seek to restrain encroachment upon his rights? So far as the petition discloses he did not. He waited. He permitted appellee to change his position by investing his means in the hazardous undertaking of discovering oil or gas in paying quantities. After seven years of waiting and watching the efforts and investments of another crowned with success appellant invoked the jurisdiction of a court of equity. He now demands an accounting of the profits from the venture. In *Malone v. Young*, supra, where a similar delay and its consequences were involved, we said:

"What constitutes reasonable time within which a person may assert his claim generally depends upon the circumstances in the particular case. (*Campbell v. Warnberg*, 133 Kan. 246, 299 P. 2d 583.) The doctrine that a person claiming an interest or a right may be required to assert it promptly is especially applicable to oil and gas properties which are subject to rapid fluctuation in value. That he will not be permitted to engage in speculative delay until the value of such property has greatly appreciated, is definitely established. (*Kirk v. First National Bank*, 132 Kan. 404, 407, 295 Pac. 703; *Campbell v. Warnberg*, supra; *Hanley v. Federal Mining & Smelting Co.*, 235 Fed. 769; *Starkweather v. Jenner*, supra; 21 C. J., Equity, Speculative Delay, § 220.) Of course, mere delay in asserting title will not ordinarily defeat an action on the ground of laches unless there has been a change in the value of the properties or in the relation of the parties which would cause prejudice to the adverse party. (*Spradling v. Hawk*, 133 Kan. 545, 550, 1 P. 2d 268.) In the instant case, however, the property had been developed and its value established as a result of large expenditures of money and the industry and enterprise of others while plaintiff remained utterly passive. So long as the risks were being taken by others the alleged breach of a trust relation by his cotenant, Young, and the fraudulent plan and device of Young and others to deprive him of his interest was of no apparent concern. When, however, those risks were transformed into profits, principles of equity underlying the relation of cotenants, and the principles of equity which guard against the bad faith and the fraudulent plans and devices of others became dominant and controlling considerations. Under such circumstances equity will not grant the relief sought. (*Kirsch v. City of Abilene*, 120 Kan. 749, 244 Pac. 1054.)" (p. 262.)

To the same effect also are *Twin-Lick Oil Co. v. Marbury*, 91 U. S. 587, 23 L. Ed. 328 and *Preston v. Kaw Pipe Line Co.*, 113 F. 2d 311. In the last case cited headnotes 3 and 6 read:

"Equity does not concern itself with mere lapse of time before institution of action, but with inequity of permitting claim to be enforced after such time." (Headnote 3.)

"One may not sit idly by for any considerable time, without asserting claim to property of highly speculative nature, to await outcome of others' efforts to develop and prove such property, and, when such efforts are successful, come in and claim fruits thereof." (Headnote 6.)

Appellant predicates the relief sought upon the equitable doctrine a trust was established and that he is entitled to an accounting from the alleged trustee. It has been held that such a suit must be determined by equitable principles of estoppel and not by statutes of limitation. (*Preston v. Kaw Pipe Line Co.*, supra.) Of course, where a petition on its face discloses laches and that it would be inequitable to grant the relief sought, as does the instant petition, it may be challenged by demurrer on the ground it fails to state a cause of action or, probably more accurately stated, upon the ground the petition on its face affirmatively discloses the party is not entitled to the relief sought.

In addition to the breach of contract and the alleged trust relation appellant seeks to excuse development of the lease by stating he was prevented from drilling by litigation. He states the title of the various actions. The record fails to disclose the nature of the litigation and that any restraining order ever prevented his development of the lease. (See *Zinc Co. v. Burtiss*, 72 Kan. 441, 83 Pac. 989.) But that is not all the petition fails to reveal. The petition expressly alleges the issues in this action have never been determined. Why have they not been determined in a period of approximately twenty years? Nowhere does appellant allege that any of the litigation prevented him from asserting and having his alleged rights to the lease determined in a court of competent jurisdiction. In *Lindholm v. Heithecker*, 113 Kan. 96, 98, 213 Pac. 671, it was said:

"In order that the pendency of other proceedings shall have the effect to toll the statute of limitations upon a cause of action, the proceedings must be such as to prevent enforcement of the remedy of action.

"This court has recognized the rule that the pendency of legal proceedings may affect the running of the statute. In *Harrison v. Scott*, 77 Kan. 637, 95 Pac. 1045, and in *City of Hutchinson v. Hutchinson*, 92 Kan. 518, 141 Pac. 589, the court quoted, with approval, the statement found in 25 Cyc. 1278, as follows:

" 'Where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his rights.' (p. 525.)"

In *Harrison v. Scott,* supra, it was held:

"In order that the pendency of other proceedings will have the effect to toll the statute of limitations upon a cause of action the proceedings must be such as prevent the enforcement of the remedy by action." (Syl. ¶ 3.)

These decisions were followed in the Preston case, *supra,* in which the pertinent headnote reads:

"To excuse delay in instituting action to enforce claim to property because of pending litigation, it must appear that such litigation prevents assertion of claim." (Headnote 4.)

Appellant does not contend the Focks' lease constitutes a conveyance of minerals in place. He does contend an oil and gas lease is an interest in real estate, that the fifteen-year statute of limitations applies and has not run since 1937 when the adverse possession of appellee began. With respect to the nature of an oil and gas lease under our decisions see *Burden v. Gypsy Oil Co.,* 141 Kan. 147, 40 P. 2d 463. Numerous other cases might be cited but that is unnecessary. For the purposes of the trust theory of this action it is immaterial whether the interest sought to be recovered is real or personal property. That theory lies entirely in equity. Appellant seeks to impress a trust upon specific property and to have an accounting. Those issues are determined upon equitable grounds and not by statutes of limitation. (*Preston v. Kaw Pipe Line Co.,* supra.)

The trial court properly sustained the demurrer and the ruling is affirmed.