No. 43,062

FORREST D. McDANIEL, *Appellee,* v. ARNOLD MESSERSCHMIDT (Defendant) and ELMER SPAIN, *Appellant.*

(382 P. 2d 304)

Opinion filed June 8, 1963.

Paul R. Wunsch, of Kingman, argued the cause, and Charles H. Stewart and Robert S. Wunsch, both of Kingman, were with him on the briefs for the appellant.

Theodore C. Geisert, of Kingman, argued the cause, and Starr Calvert, Jr., of Denver, Colorado, was with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from the trial court's order sustaining plaintiff's motion to strike certain portions of defendant Spain's answer which stricken portions, Spain contends, constitute a material defense to the allegations of plaintiff's petition and are, therefore, necessary to his presentation of a full and complete defense to plaintiff's purported cause of action.

In brief, the pertinent portions of plaintiff's petition alleged that on January 22, 1955, Spain and Messerschmidt, a partnership, by written contract, agreed to construct, complete, and deliver a residence dwelling to plaintiff along with certain other improvements. Plaintiff completed performance of the contract on his part but defendants defaulted in the construction of the dwelling and improvements and thus made it necessary for plaintiff himself to complete performance of the contract, which he did in the following particulars:

| | |
|---|---:|
| "Concrete driveway | $350.00 |
| "Doors on China Closets | 30.00 |
| "Glass Doors on Pass thru Window | 15.00 |
| "Second Septic Tank | 292.00 |
| "Install Deep Sink in Utility Room | 25.00 |
| "Install Utility Built-ins | 75.00 |
| "Install Bathroom Divider Glass | 10.00 |
| "Install 5 Totalities at $8.00 each | 40.00 |
| Total | $817.00" |

The terms of the contract provided that the dwelling was to be completed by defendants on or before June 1, 1955, but the petition alleged defendants abandoned it on August 2, 1955, and plaintiff was unable to complete the dwelling for occupancy until September 24, 1955. The remainder of the petition referred to damages with which we are not presently concerned.

As heretofore mentioned, part of Spain's answer was challenged by a motion to strike. Only part of the motion was sustained by the trial court's order and for purposes of clarification, we shall briefly summarize the portions not stricken. Spain admitted that during 1954 and 1955 he and Messerschmidt had a partnership for the purpose of constructing residences in and around Wichita. Spain did not sign the building contract in question, did not authorize execution thereof by Messerschmidt, and had no knowledge of its execution. Spain knew that in the early part of 1955

Messerschmidt had some dealings with plaintiff and Messerschmidt had commenced to build plaintiff's home but Spain denied entering upon the construction of plaintiff's home himself. Spain had entered into a contract with the Messerschmidts and Dyes whereby he sold all his interests to the four of them. In May, 1955, Spain conversed with plaintiff and advised plaintiff he had sold out everything to the Messerschmidts and Dyes and he had no further connection with their building contracts including plaintiff's home. In other words, Spain was no longer Messerschmidt's partner. Plaintiff thereupon advised Spain he knew Spain was no longer engaged in business with Messerschmidt. That he knew Messerschmidt had become a partner with L. G. Dye, and that partnership had taken over the work and obligations in connection with the building of plaintiff's home. Plaintiff was satisfied with such arrangement and he would no longer look to Spain to perform any of the terms and conditions of the contract.

The answer further stated that in June, 1955, plaintiff and his attorney had discussed the construction of plaintiff's home with Spain and plaintiff had stated he was not looking to Spain for the construction of his home because he knew Spain had no further connection and interest in the building contract, but he was looking to Dye and Messerschmidt. If Spain had ever had any obligation to erect plaintiff's residence, the contract had been abrogated and terminated, with which plaintiff orally agreed.

We now come to the stricken portions of the answer to the effect that after June, 1955, Spain had no information whatsoever relative to the construction of plaintiff's home, and he had no knowledge of any default in the performance of such building contract by Messerschmidt and Dye until this action was filed on January 23, 1960. Plaintiff had never requested Spain to complete the dwelling nor had he advised Spain of any default in performance of the contract, if such did occur. Plaintiff knew L. G. Dye had paid for labor and material on plaintiff's residence and had sued Spain to recoup, but plaintiff had not refuted Dye's claim or advised Spain that plaintiff had to finish the contract. Spain alleged plaintiff's cause of action was barred by both the three year and the five year statute of limitation but if not, then plaintiff was barred under the doctrine of laches because any cause of action plaintiff had had accrued in September, 1955. That if there had been any default Spain had no knowledge of such until the commencement of this

action, and further, if any default had occurred, then Messerschmidt and Dye would have been responsible to Spain for whatever damages plaintiff might recover in this act. Had plaintiff commenced his action in proper time, or given notice to Spain of any defult, Spain could have protected himself against Messerschmidt and Dye, but by the time the present action was commenced, it was barred by the statute of limitation and Spain cannot now legally hold Messerschmidt and Dye responsible to him for any claims allowed against him. Additional reasons stated were that Messerschmidt and Dye were in such financial condition no recovery could be had against them and their whereabouts were unknown to Spain.

The above concludes the stricken portions of the answer. In the remainder of the answer Spain merely elucidated on plaintiff's prejudicial conduct which deprived Spain of a cause of action and stated plaintiff was thereby estopped from bringing this action against Spain and that such action should be dismissed.

The record discloses defendant's answer alleged facts to the effect that plaintiff not only knew of the subsequent agreement between Spain and the Dyes and Messerchmidts and was satisfied therewith and did not look to Spain for any damages, but in reality he looked to Messerschmidt and Dye for relief under their contract. The answer, partially in the nonstricken portions and partially in the stricken portions, also alleged further facts attempting to set up a defense of laches or equitable estoppel. Although plaintiff contends the doctrine of laches does not apply to pure actions at law, which he claims this to be, and applies only to suits in equity, our cases do not support his theory. For instance, *Spradling v. Hawk*, 133 Kan. 545, 1 P. 2d 268, states:

"Laches does not grow out of the mere lapse of time and will not defeat an action, unless there has been some change in the condition or relations of the property or the parties which would prejudice the rights of the adverse party." (Syl. ¶ 4.)

In the corresponding portion of the Spradling opinion (p. 550) *Harris v. Defenbaugh*, 82 Kan. 765, 109 Pac. 681 is cited. A reading of the Harris case indicates the question of laches was there more fully discussed and the following ruling was made:

"The doctrine of laches is founded to some extent upon the principles of equitable estoppel. Where, by reason of acquiescence or long lapse of time, there is a possible loss of testimony or increased difficulty of defense, the doctrine may be applied in the discretion of the court; but laches does not consist in mere lapse of time." (Syl. ¶ 5.)

We have not overlooked other contentions of plaintiff. However, he would call upon this court to examine evidence that has not been introduced either in the trial court or in this court which, of course, cannot be done at this stage of the proceedings. If the matters stricken from Spain's answer are proved by evidence on the trial of the issues, we believe such allegations will constitute a meritorious defense to plaintiff's cause of action. See *Boettcher v. Criscione*, 180 Kan. 39, 299 P. 2d 806, where this court stated:

> "An order sustaining a motion to strike is appealable as a final order if it determines any part or all of a lawsuit or as applied to an answer, if it in effect deprives the defendant of a meritorious defense which, if supported by evidence, would defeat plaintiff's cause of action, or a part thereof." (p. 44.)

The inescapable conclusion is that the order of the trial court on the motion to strike should be reversed and the cause remanded with directions to reinstate the stricken portions of the answer and proceed with the trial of the cause.

Reversed and remanded with directions.