No. 46,543

HOWARD DARBY, JR., M. G. TRABUE and GEORGE T. HEUMANN, d/b/a
T. D. H. COMPANY, a partnership; and FIRST NATIONAL BANK IN
GOODLAND, KANSAS, a National Banking Corporation, *Appellees,*
v. ELIZABETH KEERAN, *Appellant.*

(505 P. 2d 710)

Opinion filed January 20, 1973.

J. J. B. *Wigglesworth,* of Topeka, argued the cause, and *John M. Cogswell,* of Denver, Colorado, and *Charles A Sparks,* of Goodland, were with him on the brief for the appellant.

*Jack Burr,* of the firm of Zuspann, Soward and Whalen, of Goodland, argued the cause, and *Selby S. Soward,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is an action for the specific performance of a real estate contract. The court entered judgment enforcing the contract and the present appeal was taken from that judgment.

On September 20, 1969, a contract was executed for the sale of a tract of land, containing approximately 1.24 acres, abutting Highway I-70 in Sherman County, Kansas. Elizabeth Keeran, the defendant in this case, was the seller and the plaintiffs, Howard Darby, Jr., M. G. Trabue and George T. Heumann d/b/a T. D. H. Company, a partnership, were the buyers. We shall refer to the parties as plaintiffs or T. D. H. or buyers, on the one hand and as defendant or Keeran or seller, on the other hand.

The sale price was $7,000, payable as follows: $350 cash in hand, $1400 "upon approval of the merchantability of the abstract", and the balance in 10 equal annual installments of $525 each plus 7% interest.

As a part of the bargain Keeran agreed to convey the tract by warranty deed clear of encumbrances and to furnish an abstract showing a good merchantable title. The contract further provided that the buyers should have a reasonable time to examine the abstract and that the seller should then have a reasonable time to satisfy the requirements and make the title merchantable. Possession of the land was to be given when the $1400 payment was made. The deed was to be placed in escrow in a Goodland bank and was

to be delivered upon full compliance with the agreement. Provision was made for proration of all taxes to date of possession and time was declared to be of the essence.

Miss Keeran executed the contract both individually and as executrix of the estate of Almeda Keeran, her mother, which was then in process of administration. We glean from the record that the defendant had inherited a one-half interest in the tract from her father, and that the other half had been willed to her by her mother.

On October 10, 1969, some twenty days after the contract was signed, a title opinion was given to T. D. H. by Charles G. Dockhorn, of Goodland, Kansas, a member of the bar of this state in good standing. The opinion pointed out that the estate of Almeda Keeran should be appraised and valued for tax purposes; that the federal estate tax and the state inheritance tax should be paid or released and the same shown on the abstract; and that the abstract should be returned for further examination.

A second title opinion was rendered on February 10, 1970, in which Mr. Dockhorn stated that the requirements made in his first letter regarding the payment of taxes had not been met and that he did not feel the title was mechantable until the federal and state taxes were determined and paid. Nothing appears to have been done so far as the abstract is concerned from that date to this.

Under date of March 9, 1970, Miss Keeran wrote the real estate agent handling the transaction inquiring what was holding up the deal. In his response, the agent advised it would be 3 or 4 months before the estate would be settled.

On July 20, 1970, the defendant, on the pretext that she was fed up with the delay, caused her Denver attorney to inform the plaintiffs that she had elected to treat the contract as a nullity because of their failure to make the $1400 payment. At this time she offered to return the $350 earnest money already paid.

Counsel for T. D. H. responded to the defendant's Denver attorney on July 23, 1970, stating that Keeran had not yet complied with the title requirements; that the plaintiffs were ready, willing and able to comply with the terms of the contract when Keeran performed as required by the contract; that T. D. H. did not consider that the contract was terminated or that Keeran had the right to terminate it unilaterally; and that T. D. H. would comply with the terms of the agreement promptly on proof that the liens were

released. The letter also stated that a return tender of the $350 earnest money would not be accepted.

It appears from the record that about May 20, 1970, the defendant paid a substantial part of the federal tax due on her mother's estate and that on or about July 22, 1970, after her anticipatory breach of the agreement, she paid a balance of $2,113. The Kansas inheritance taxes were paid on or about July 29, 1970, which was also after the breach. No final determination or lien waiver was received from the internal revenue service until April 29, 1971. Neither the payments nor the waiver was made known to plaintiffs until June 14, 1971, long after this suit was filed, and no showing in regard thereto has ever been placed on the abstract so far as we can determine.

The present action asking for specific performance was commenced December 10, 1970. A motion was filed by Keeran to dismiss the petition and the same was overruled. On June 14, 1971, at a pretrial hearing, summary judgment was entered in plaintiff's favor for the enforcement of the contract.

For her first point, the defendant contends it was improper for the trial court to enter summary judgment at a pretrial hearing when no motion therefor had been made. We find no merit in this contention. Miss Keeran states in her brief that "Both parties have expressly or impliedly agreed from the outset that there were no genuine issues of fact" and we agree with this assessment of the record.

Under the provisions of K. S. A. 60-256 the trial court is authorized to enter summary judgment when there is no genuine issue of material fact. (*Brick v. City of Wichita*, 195 Kan. 206, 403 P. 2d 964; *Evans v. Lynch*, 200 Kan. 331, 333, 436 P. 2d 867; *Harter v. Kuntz*, 207 Kan. 338, 341, 485 P. 2d 190.) We have also held that the trial court may enter summary judgment on its own motion even though no motion therefor has been made by either litigant. (*Green v. Kaesler-Allen Lumber Co.*, 197 Kan. 788, 789, 420 P. 2d 1019; *Knapp v. Unified School District*, 209 Kan. 237, 240, 496 P. 2d 1400.) Assuming that the plaintiffs were entitled to judgment in this case as a matter of law, the trial court was correct in entering judgment on its own motion. We shall therefore proceed to consider the merits of this case.

This is a simple contract for the sale of real estate. It is a plain and unambiguous contract whose language is neither doubt-

ful nor obscure. The words are to be given their plain, general and common meaning (*United States v. Kansas Gas and Electric Company,* 215 F. Supp. 532) and the contract is subject to enforcement according to its terms. (*Hazelton v. Chaffin,* 109 Kan. 175, 197 Pac. 870.)

By the express terms of the contract, the seller was to furnish an abstract showing *merchantable title.* The buyers were to pay the purchase price in installments. The second payment was due *on approval of merchantable title.* The seller refused to furnish an abstract showing merchantable title. Under these circumstances we believe the remedy of specific performance is available.

On July 20, 1970, Keeran informed T. D. H. she would no longer be bound by her contract, and she has resolutely maintained this stance ever since. The plaintiffs replied they were ready, able and willing to comply with the terms of their agreement as soon as the seller performed her part. In 81 C. J. S., Specific Performance, § 25, p. 465, the text recites:

"A purchaser or optionee of land who has performed or tendered performance of his part of the contract is entitled to specific performance of the contract."

For a recent Kansas case upholding the right of a buyer to sue for specific performance of a land contract, see *Russell v. Ferrell,* 181 Kan. 259, 311 P. 2d 347.

Payment of the second installment due on the purchase price was not a condition precedent to Miss Keeran's obligation to furnish an abstract showing merchantable title; the second installment was due, expressly, "upon approval of the merchantability of the abstracts." In *Hamilton v. Binger,* 162 Kan. 415, 176 P. 2d 553, an action brought by the vendor to recover the balance due on a real estate contract, this court said:

". . . [W]hen a contract for the sale and purchase of land provides a vendor shall furnish the vendee with an abstract showing marketable title the abstract must show on its face a good title in the vendor (55 Am. Jur. 734, § 297; Thompson on 'Abstracts and Titles,' 14, § 9), and . . . the showing of such a title in the abstract is a condition precedent to be performed by the vendor before he will be permitted to recover any balance claimed by him to be due on a contract for the sale of real estate (66 C. J. 957, § 664; Thompson on 'Abstracts and Titles,' 12, § 8; Patton on 'Titles,' 119, § 25)." (pp. 421, 422.)

See, also, 55 Am. Jur., Vendor and Purchaser, § 310, p. 742.

Miss Keeran agreed to provide an abstract showing a good

merchantable title. The terms "merchantable title" and "marketable title" are interchangeable when used in the context of a land contract, and they denote the same quality of title to be furnished. Ballentine's Law Dictionary with Pronunciations, 2d Ed., p. 811, defines merchantable title in this way:

"A perfect title, a merchantable title, or a marketable title, when the expression is used in connection with the sale of real property, means one and the same thing. . . ."

On numerous occasions this court has discussed what is meant by a marketable title. In *Newell v. McMillan,* 139 Kan. 94, 30 P. 2d 126, the term is defined in this fashion:

". . . The rule is a just and familiar one that a marketable title is one which is free from reasonable doubt; and under this rule a title is doubtful and therefore unmarketable if it exposes the party holding it to the hazard of litigation. (Citing cases.)" (p. 100.)

The definition has been repeated in *Peatling v. Baird,* 168 Kan. 528, 213 P. 2d 1015; *Lohmeyer v. Bower,* 170 Kan. 442, 227 P. 2d 102; *Johnson Bros. Furniture Co. v. Rothfuss,* 186 Kan. 287, 349 P. 2d 903.

In *Eisenhour v. Cities Service Oil Co.,* 149 Kan. 853, 89 P. 2d 912, the court had this, also, to say on the subject:

". . . It is not necessary to show that a title is bad, in fact, in order to render it unmarketable or nonmerchantable. It is sufficient if there be doubt, based on reasonable grounds, which would impel a reasonably prudent man, familiar with the facts, to reject it in the ordinary course of business. (66 C. J. 863; *Williams v. Bricker,* 83 Kan. 53, 109 Pac. 998.)" (p. 858.)

This rule was later approved in *Ayers v. Graff,* 153 Kan. 209, 109 P. 2d 202; *Barrett v. McMannis,* 153 Kan. 420, 110 P. 2d 774; and *Ghormley v. Kleeden,* 155 Kan. 319, 124 P. 2d 467.

We view the title requirements made by the plaintiffs' attorney as being reasonable and legally justified. The federal tax imposed on the estate of a decedent by Chapter 11 of the Internal Revenue Code of 1954 (see 26 U.S. C. A. § 2001) constitutes a lien upon property of the estate, for a period of ten years from date of death unless sooner paid, with certain exceptions not material here. ( See 26 U. S. C. A. § 6324a.) State inheritance taxes imposed under K. S. A. 79-1501a become a charge on a decedent's property by virtue of K. S. A. (now 1972 Supp.) 79-1502.

As we have already said, Almeda Keeran's estate was in the process of probate when the present contract was executed. Her interest in the tract involved would be subject to estate and inheritance taxes until either the taxes were paid or waivers were obtained.

The buyers were entitled to an abstract showing either one or the other. In 92 C. J. S., Vendor & Purchaser, § 203, p. 59, the rule is stated:

"A contract calling for a conveyance free of encumbrances is broken where at the time set for conveyance the realty is subject to tax liens, as where the property is subject to the lien of unpaid franchise taxes or income, or transfer or inheritance taxes . . ."

This rule is echoed in *Madbeth, Inc. v. Weade*, 204 Va. 199, 129 S. E. 2d 667, where it is said that a marketable title is one which, among other requisites, is free from liens and encumbrances.

In *Ward v. Downey*, 95 C. A. 2d 680, 213 P. 2d 523, an action by a vendor for the specific performance of a real estate contract, the California court held that the vendor's failure to submit documents to the title company enabling it to determine the possibility of estate taxes resulted in a defect of title which made it unmarketable within the terms of the offer to purchase.

In a New York case, *Jackson Terrace Homes, Inc. v. Rottkamp*, 40 N. Y. S. 2d 340, 180 Misc. 545, the court found that the vendor was unable to convey merchantable title as there were unsatisfied liens of New York transfer taxes and United States inheritance taxes.

The defendant relies heavily on the fact that when the contract was signed, T. D. H. knew that estate and inheritance taxes had not been paid. Keeran argues that she tendered the only title she had, *i. e.*, a title one-half of which was subject to tax liens. She insists that equity cannot expect a seller to deliver any greater title than he or she has, and she cites cases holding, in effect, that if a vendor has no title and performance on his part is impossible, a court will not enter a decree which would be fruitless. (*Thompson v. Musick*, 85 Kan. 399, 116 Pac. 612; *Riley v. Allen*, 71 Kan. 625, 81 Pac. 186.)

Those cases have no application here. Miss Keeran possessed full title to the tract in question, one-half coming to her through her father, the other half from her mother. The ownership was not divided. While the interest coming to defendant from her mother was subject to payment of estate and inheritance taxes, that was a condition which lay within her power to correct. As executor of her mother's estate, Miss Keeran had both authority and responsibility to pay the taxes and discharge the liens. That she was in a position to protect the property against tax liens is made abundantly clear from the fact that after breaching her contract she paid the existing taxes and secured the proper clearances—although she did not have them shown on the abstract or notify the buyers.

Finally, the defendant argues that the plaintiffs are barred by laches. This contention cannot be sustained. Her breach of contract occurred July 20, 1970. Three days later the plaintiffs rejected her attempted unilateral termination and refused her tender to return the earnest money. After a wait of less than five months, the present action was commenced.

We do not consider the delay in filing suit as being inordinate in and of itself. Lapse of time is necessarily a relative matter in which all surrounding circumstances must be taken into account. As the court said in *Golden v. Claudel*, 85 Kan. 465, 471, 118 Pac. 77, each case must be governed by its own facts and what might be considered a lapse of sufficient time to defeat an action in one case might be insufficient in another.

As we view the case before us, T. D. H. might reasonably have assumed that after Miss Keeran received their letter of July 23, 1970, she would change her position and carry out her part of the bargain. At least, we cannot fault T. D. H. for affording her a respectable time in which to have a change of heart.

Moreover, as this court said in *Utilities Co. v. Bowersock*, 109 Kan. 718, 728, 202 Pac. 92: "Delay alone never constitutes laches." Adherence to this principle finds expression in subsequent opinions handed down by this court. In *Spradling v. Hawk*, 133 Kan. 545, 1 P. 2d 268, the rule was stated in these words:

"Laches does not grow out of the mere lapse of time and will not defeat an action, unless there has been some change in the condition or relations of the property or the parties which would prejudice the rights of the adverse party." (Syl. ¶ 4.)

See, also, *Malone v. Young*, 148 Kan. 250, 262, 81 P. 2d 23; *Preston v. Shields*, 159 Kan. 575, 582, 156 P. 2d 543; *McDaniel v. Messerschmidt*, 191 Kan. 461, 464, 382 P. 2d 304.

Despite Miss Keeran's assertions to the contrary no legal justification appears for her breach of contract. The trial court did not err in decreeing specific performance of the agreement and its judgement is affirmed.