PATRICK F. KELERHER and WILLIAM C. LITTLE, Appellants, v. JOHN B. HENDERSON, Appellant.

**In Banc, April 29, 1907.**

1. **PLEADING: New Matter: General Denial.** Under the statute, when new matter is relied upon, in defense or in evidence, it must be set up in the answer. A general denial is not sufficient. If defendant intends to rely upon new matter which goes to defeat or avoid plaintiff's action, he must set forth in clear and concise terms each substantial fact intended to be so relied upon.

2. ———: ———: ———: **Champertous Contract.** Where plaintiff sues on a contract which contains no allegation in reference to champerty, defendant will not be permitted to interpose the defense of champerty unless he pleads it in his answer. That is "new matter" within the meaning of the Practice Act

3. ———: ———: ———: ———: **On Face.** The rule that when a contract is offered in evidence and its immorality and illegality appear on its face a recovery will be denied even though the answer is a general denial, does not apply where the client agrees to pay one-half of any and all reasonable expenses or sums of money that may be necessary and proper to insure the successful prosecution of the suit, for such a contract is not champertous on its face. It cannot be said to be an agreement to pay costs of the suit.

4. **ATTORNEY: Champertous Contract: Expenses.** There are many necessary and proper expenses an attorney may contract to pay in connection with the prosecution of a lawsuit.

5. ———: ———: **Costs.** In one contract the clients (plaintiffs) agreed to pay one-half of all reasonable expenses that may be necessary and proper to expend for a successful prosecution of suits on county bonds, and that contract referred to another beween the attorneys (defendants) and the bondholders in which the attorneys agreed to pay all costs of whatever nature in case of the loss of any suit. *Held*, in a suit by the clients against the attorneys for their proportion of the moneys realized from the suits, that even if the agreement as a whole be construed to mean that the attorneys would pay one-half of the costs of the suits, that was their fault, and it should not be visited on the plaintiffs in the face of their express agreemen to pay one half of all proper and reasonable expenses.

6. **CHAMPERTY.** The law of champerty exists in this State.

7. ———: **Contract Must Be Champertous.** The law does not impress its condemnation upon the subject-matter of the contract, but upon the contract itself. If the contract itself is not champertous, the court will not, when suit is brought on the contract, refused to enforce it simply because certain collateral portions of the contract or of the transaction are tainted with illegality.

8. **COUNTERCLAIM: Practice.** Affirmative defenses and counterclaims stand on the same footing that the petition does, and if no evidence is introduced in support thereof, they should be dismissed.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED AND REMANDED.

*Collins & Chappell* and *Joseph H. Zumbalen* for plaintiffs-appellants.

(1) The contract sued on is not of a champertous nature. 4 Blackstone's Commentaries, p. 135; Duke v. Harper, 66 Mo. 56. (2) The contract between Henderson & Shields and the bondholders is no part of the contract between Henderson & Shields and Kelerher & Co. (3) It is incompetent for defendant to set up the alleged illegality of the contract with the bondholders as a defense to this case. Vette v. Geist, 155 Mo. 27; Crane v. Whittemore, 4 Mo. App. 510. (4) The defense of champerty is a personal privilege and can not be made use of by a person other than a defendant when sued on the champertous contract. Bick v. Overfelt, 88 Mo. App. 139. (5) The defense of champerty is an affirmative defense and must be pleaded. Moore v. Ringo, 82 Mo. 473; McDearmott v. Sedgwick, 140 Mo. 182. (6) Even if defendant could avail himself of the defense of champerty in this case, it was error on the part of the referee to refuse to hear further testimony and to recommend a finding and judgment against plaintiffs. 5 Am. and Eng. Ency. Law (2 Ed.), 820. (7) The doctrine of champerty does not obtain in the State of Missouri.

*E. P. Johnson* and *Barclay; Shields & Fauntleroy* for defendant-appellant.

(1) The clause in the contract which is set forth in the petition "that said P. F. Kelerher & Company shall pay one-half of any and all reasonable expenses or sums of money that may be necessary and proper for us to expend to insure the successful prosecution of said suit," is a condition precedent to the right of plaintiff to recover, and a compliance with it must have been alleged in the petition either specially or generally, or an excuse for not having so alleged, or it failed to state any cause of action. Bays v. Ambrose,

32 Mo. 486; Denny v. Kile, 16 Mo. 454; Turner v. Mellier, 59 Mo. 535; Dinsmore v. Livingston County, 60 Mo. 244; Laclede Construction Co. v. Tudor Iron Works, 169 Mo. 155; St. Louis v. Cruikshank, 16 Mo. App. 496; Roy v. Boteler, 40 Mo. App. 222; Price v. Protection Co., 77 Mo. App. 240; Way v. Miller, 80 Mo. App. 385; Fairbanks, Morse & Co. v. Mining & Mfg. Co., 105 Mo. App. 652. And the objection of defendant to permitting plaintiffs to introduce any evidence on account of such failure to plead performance of said terms of said contract on their part should have been sustained. Murphy v. Ins. Co., 70 Mo. App. 83; Pier v. Heinrichoffen, 52 Mo. 335; Fairbanks, Morse & Co. v. Mining & Mfg. Co., 105 Mo. App. 652; Roy v. Boteler, 40 Mo. App. 222; Price v. Protection Co., 77 Mo. App. 240; Stout v. St. Louis Tribune Co., 52 Mo. 346; Garner v. McCullough, 48 Mo. 318. (2) A contract may be contained in several instruments, all of which may be read as one, and it is not necessary that they, in terms, refer to each other, or that the parties to them be the same. Parlin & Orendorf Co. v. Boatman, 84 Mo. App. 67; Sexton v. Anderson, 95 Mo. 373; Houch v. Frisbee, 66 Mo. App. 16; Jennings v. Todd, 118 Mo. 296; McDonald v. Wolff, 40 Mo. App. 302. (3) The bondholders' contract with Henderson & Shields is illegal, this suit is an attempt by them to speculate on their principals for their own private gain and, therefore, this action cannot be maintained by them. Rea v. Copelin, 47 Mo. 46; Grumley v. Webb, 44 Mo. 444; Bent v. Priest, 86 Mo. 475; Exter v. Sawyer, 146 Mo. 302; Newman v. Newman, 152 Mo. 398; 15 Am. and Eng. Ency. Law (2 Ed.), 945; Atlee v. Fink, 75 Mo. 100; Green v. Corrigan, 87 Mo. 359; Forsyth v. Woods, 11 Wall. (78 U. S.), 484; Megwire v. Corwine, 101 U. S. 108; Goodrich v. Tenny, 144 Ill. 422; Byrd v. Hughes, 84 Ill. 174; Carpenter v. Taylor, 164 N. Y. 178; Ridenbaugh v. Young, 145 Mo. 274; Tyler v. Lari-

more, 19 Mo. App. 445; Brick v. Seal, 45 Mo. App. 475; Gwinn v. Simes, 61 Mo. 339; Wolf v. Duncan, 80 Mo. App. 421; Sprague v. Rooney, 104 Mo. 349; St. Louis Fair Association v. Carmody, 151 Mo. 566. (4) An agreement to pay costs and receive a portion of the proceeds is champerty. · 5 Am. and Eng. Ency. Law (2 Ed.), 815 and 816; Euneau v. Rieger, 105 Mo. 680; Duke v. Harper, 66 Mo. 51; Bent v. Priest, 10 Mo. App. 543, 86 Mo. 475; Million v. Olmsorg, 10 Mo. App. 432; Bent v. Lewis, 15 Mo. App. 40; Moore v. Ringe, 82 Mo. 468; Pike v. Martindale, 91 Mo. 268; Comstock v. Flower, 109 Mo. App. 275; Railroad v. Johnson, 29 Kan. 218; Quigley v. Thompson, 53 Ind. 317; Hyatt v. Railroad, 68 Iowa 662; Low v. Hutchinson, 37 Maine 196; Belding v. Smythe, 138 Mass. 530.

IN DIVISION ONE.

WOODSON, J.—This is a suit which was instituted in the circuit court of the city of St. Louis, and based upon a written contract which is set out in the petition.

The petition, in substance, alleges that at all times therein mentioned the plaintiffs were copartners in business under the firm name of P. F. Kelerher & Co.; that defendant and one George H. Shields were copartners in business under the firm name and style of Henderson & Shields, engaged in the practice of law; that at the city of St. Louis, on or about the 20th day of February, 1878, the said firm of Henderson & Shields, of which defendant was a member, entered into the following written agreement with the plaintiffs, to-wit:

"It is hereby agreed by the undersigned that for and in consideration of the services rendered by P. F. Kelerher & Co. in procuring from the bondholders of Knox county, Missouri, a certain lot of bonds and past due coupons as described in a receipt given to said

P. F. Kelerher & Co., as trustees, this day and to be sued upon in accordance with a contract appended to said receipt to pay said P. F. Kelerher & Co. 50% — one-half of the fee accruing to us in accordance to the terms of said contract. It being understood that said P. F. Kelerher & Co. shall pay one-half of any and all reasonable expenses or sums of money that may be necessary and proper for us to expend to insure the successful prosecution of said suit. In other words, said P. F. Kelerher & Co. to share equally with us in the expenses and profits accruing from said suit," and dated at St. Louis, February 20, 1878; that said contract appended to said receipt provided that Henderson & Shields were to receive as a fee for the legal services to be rendered by them twenty-five per cent of the total amount of bonds and coupons involved in the suit or suits which they might bring; that plaintiffs did procure from various bondholders of Knox county, Missouri, a large number of bonds and turned them over to the firm of Henderson & Shields to be sued upon according to the contract appended to said receipt; and that in pursuance of said agreements Henderson & Shields did institute suits upon said bonds and coupons and prosecuted same to final judgment and received as their fee in said matter, on or about the 1st day of October, 1894, the sum of twenty thousand dollars, and that by reason of the premises the defendant became indebted to the plaintiffs in the sum of ten thousand dollars, which sum plaintiff demanded of defendant, on or about October 17, 1894, which was refused and is still due and unpaid.

The prayer of the petition is for a judgment for the ten thousand dollars and six per cent interest from October 17, 1894.

The answer of defendant admits the copartnership of plaintiffs, the copartnership of defendant and said Shields, and that the firm of Henderson & Shields

executed the contract of February 20, 1878, set out in the petition, and denies all other allegations in the petition.

The answer further, substantially, states that plaintiffs procured from various persons certain bonds and coupons and coupons of other bonds, of Knox county, Missouri, and turned them over to Henderson & Shields, to be sued upon by said firm, in the name of Samuel C. Davis, and that said firm, with the consent and at the request of plaintiffs, instituted a suit thereon in the name of said Davis, in the circuit court of the United States, against Knox county, and recovered judgment thereon, on March 22, 1878, for the sum of $16,975.35; that in the prosecution of said suit it became necessary and proper for defendant to expend, and he did expend divers and large sums of money, aggregating the sum of $5,911.06, the items of which appear in an attached account, a sum in excess of the sum received or contracted to have been received by said Henderson & Shields from the owners of bonds; that plaintiffs were fully advised of the making of said expenditures and admitted the reasonableness and necessity of making same; the defendant demanded of plaintiffs one-half of said sum so paid by him, which they refused to pay, and asks judgment for said sum and interest.

Defendant for further answer and counterclaim states, that there were placed in the hands of plaintiffs, by the owners thereof, two other bonds for the sum of five hundred dollars each with coupons attached, of said Knox county, Missouri, which, under the provisions of the contract set out in the petition, should have been turned over to Henderson & Shields, to be sued upon by them, but that plaintiffs, in violation of their duty, failed and refused to turn same over to said Henderson & Shields, and wrongfully converted them to their own use, to defendant's damage in the

sum of five hundred dollars. That said firm of Henderson & Shields was dissolved January 1, 1883, and its affairs have been fully settled, and said George H. Shields has assigned to defendant his interest in said claim for damages, and, for which with interest, defendant asks judgment.

Defendant for further answer and counterclaim states, that on June 27, 1887, plaintiffs sold said last two bonds and coupons to L. A. Coquard, with all interest accrued thereon, with the amount of judgment obtained on coupons formally attached to them, aggregating the sum of $2,203.58, in consideration and for which said Coquard paid the sum of $743.75. That plaintiffs delivered to said Coquard only one of said bonds, and refused to deliver to him the other one, by which Coquard was damaged in the sum of $1,600. That said Coquard for value received assigned said claim to defendant, for which he asks judgment, with interest.

Defendant for further answer says, that on the 8th day of April, 1889, plaintiff William C. Little, for value received, assigned to defendant all of his right, title and interest that he might be or become entitled to under the contract set out in the petition, wherefore defendant says said Little is not a necessary or proper party to this suit.

To this answer plaintiffs file separate replies, Kelerher's being a general denial of every allegation in the answer.

Little denies all the allegations in the answer excepting the fifth paragraph thereof, and in reply to that says that he made the assignment stated therein, not absolutely, but as collateral security for an indebtedness owing by him to defendant, which was much smaller than the value of the said security.

On the pleadings the case was, by agreement of parties, referred to John F. Dryden, as referee, to

try all of the issues of the case. Upon the trial before the referee the plaintiffs introduced the following evidence:

First, the contract, dated February 20, 1878, signed by Henderson & Shields, and set out in the petition:

Second. A receipt from Henderson & Shields to P. F. Kelerher & Co., and in connection therewith a printed form of letter from Henderson & Shields to bondholders, the printed letter not being signed in any other manner than having the name of Henderson & Shields printed upon it. The said receipt is in the following language:

"St. Louis, February 20, 1878. Received of P. F. Kelerher & Co., trustees, for the purpose of bringing suit in the U. S. Federal Courts the following described bonds and coupons of Knox county, Missouri, issued in behalf of the Mississippi and Missouri R. R. Company, to-wit: [then are enumerated a large number of bonds and past due coupons; $13,504 in face value thereof belonged to Samuel C. Davis & Co., $1,400 to C. R. Walther, $1,120 to Catherine A. Thornbury, executrix, and $280 to Stover]; said suit to be brought according to the terms of agreement herewith printed.

"HENDERSON & SHIELDS."

The letter or agreement appended to said receipt is printed, and is as follows:

"St. Louis           187

"To the bondholders,
"Of ...............
    " ...............

"It is hereby proposed by the undersigned to institute and prosecute to final judgment a suit or suits in the circuit and supreme courts of the United States at own proper cost, charge and expense on the matured coupons from bonds of the county of ........ State of Missouri, issued in behalf of .......... Township to

........... and dated ........ day of ............ 18....

"And upon obtaining final judgment in favor of the bondholders, to receive for services rendered therein, twenty-five per cent of the total amount of bonds and coupons involved in such suit, which shall constitute the full and entire fee to be paid us. In case of loss of any such suit, we hereby obligate and bind ourselves to pay all costs thereon, of whatever nature, and to be entitled to no fee whatever, or other claim upon said bondholders. Provided, however, that we shall not be required to institute any suit until the amount of coupons suable against any one county in one proceeding, shall reach the sum of $5,000. And provided further, that not less than twenty-five per cent of the bonds—the coupons of which are to be sued upon, shall be deposited with P. F. Kelerher & Co., of St. Louis, to be held by them, in trust, for the fulfillment of the terms and conditions of this proposition.

"All communications to be addressed to P.. F. Kelerher & Co., 307 North Third street, St. Louis.
"HENDERSON & SHIELDS.

"Messrs. P. F. Kelerher & Co., St. Louis:

"In accordance with the above proposition I hand you herewith the following matured coupons: ........ at $........ each $........, also $........ in bonds, as described in said proposition, to be held by you in trust for the just and correct fulfillment of above proposal which is agreed to by the undersigned.

"Witness:

........................

" ........................"

Third. A contract between Henderson & Shields and Samuel C. Davis & Co., dated St. Louis, December 6, 1877, which is as follows:

"To the Bondholders
    of Knox County,
        State of Missouri:

"It is hereby proposed by the undersigned to institute and prosecute to final judgment a suit or suits, in the circuit and supreme courts of the United States, at own proper costs, charges and expense, of the matured coupons of the county of Knox, State of Missouri, issued in behalf of and to the Missouri & Mississippi R. R. Co., and dated first day of February, 1868. And upon obtaining final judgment in favor of the bondholders, to receive for services rendered therein twenty-five per cent of the total amount of bonds and coupons involved in such suits, which shall constitute the full and entire fee to be paid to us. In case of loss of any such suit, we hereby obligate and bind ourselves to pay all costs thereof, of whatever nature, and to be entitled to no fee whatever, or other claim upon said bondholders.

"Provided, however, that we shall not be required to institute any suit until the amount of coupons suable against any one county in one proceeding, shall reach the sum of $5,000.

"And provided further that not less than twenty-five per cent of the bonds—the coupons of which are to be sued upon, shall be deposited with P. F. Kelerher & Co., of St. Louis, to be held by them, in trust, for the fulfillment of the terms and conditions of this proposition.

"All communications to be addressed to P. F. Kelerher & Co., 307 North Third street, St. Louis.

                    "HENDERSON & SHIELDS.

"Messrs. P. F. Kelerher & Co., St. Louis:

"In accordance with the above proposition, we hand you herewith the following matured coupons:

"84 at $35.60 each            $2,954.

"Also $10,550, in bonds, as described in said proposi-

tion to be held by you in trust for the just and correct fulfillment of the above proposition, which is agreed to by the undersigned.

"SAMUEL C. DAVIS & CO.

"Witness:

"WM. H. GRANT."

Plaintiff also introduced three other contracts, all similar to the above and signed by Henderson & Shields, and varying only in the dates, and the numbers and amounts of the bonds and coupons deposited. One of the deposits was signed by Charles F. Walther, one by Catherine A. Thornbury, Executrix, and the other by Emanuel Stover.

Fifth.  The plaintiffs offered the record of the case of Samuel C. Davis against Knox county, Missouri, in the circuit court of the United States, for the Eastern District of Missouri.

At this point defendant objected, not only to the admission of that record, but to the reception of any further evidence in the case, for the reason that the documents put in evidence by the plaintiffs show that the cause of action is void on two grounds—first, because they show that the plaintiffs were speculating on their principals; and, second, that the contract between plaintiffs and defendant is champertous; and suggested that no further proceedings be had in the case.

The referee sustained the objection, and plaintiffs duly excepted.

Plaintiffs then offered to prove that Henderson & Shields instituted suits upon all the bonds and coupons mentioned or referred to in the receipt from Henderson & Shields to Kelerher & Co., dated February 20, 1878; that they prosecuted those suits to final judgment, collected the judgments and received from Samuel C. Davis & Co., Charles F. Walther, C. A. Thornbury, Executrix, and Emanuel Stover, a fee of twenty-

five per cent of the amount received in each instance, aggregating the sum of $10,000, and that after the collection of the fees, Kelerher & Co., as early as October 17, 1894, demanded of Henderson & Shields the payment of one-half of said fees; that accountings have been had between the plaintiffs and defendant with reference to the amount owing by Henderson & Shields to Kelerher & Co., under the terms of the contract sued on, dated February 20, 1878, and that the only disputes with reference thereto were, first, as to whether or not under the terms of said contract Kelerher & Co. were entitled to a share in the fees arising from a suit by Henderson & Shields on the bonds in the case of Walther, Thornbury and Stover, or simply on the coupons in the three cases; and, second, as to the amount of the expenses which Henderson & Shields were entitled to charge against these plaintiffs.

To this offer defendant objected on the ground that if plaintiffs were making an offer to prove an account stated they have not pleaded anything of the kind, and, also, because it was incompetent, irrelevant and immaterial, and because the proof offered is insufficient to meet the ruling of the court.

The referee sustained the objection on the ground that it already appeared from the evidence introduced by the plaintiffs that the contract on which they are seeking to maintain their action is tainted with the illegality of the other contracts offered in evidence. To this ruling the plaintiffs duly excepted.

There was no other evidence introduced or offered by plaintiffs or defendant, and both parties thereupon submitted the cause to the referee for decision.

The referee filed his report, recommending the judgment in favor of the defendant on the cause of action stated in the petition, and in favor of the plaintiffs on the causes of action or counterclaims stated in the answer, to which report both plaintiffs and defend-

ant in due time filed their exceptions. The court over-ruled all of said exceptions, and rendered judgments against the plaintiffs and defendant, in accordance to the recommendations of the referee. Then, in due time, both the plaintiffs and defendant filed their motions for new trial, which were overruled by the court, and both parties to the suit duly excepted, and bring this case here on their joint appeal.

## FIRST.

I. Plaintiffs contend that the referee and trial court erred in excluding proper evidence offered by them and in finding for the defendant upon the ground that the contract sued on, and set out in the petition, was champertous, and as a basis for this contention state that the defendant did not plead champerty and for that reason it was not a proper defense in this case.

The statute provides that the answer of the defendant shall contain, first, a special denial of each material allegation of the petition controverted by the defendant . . .; second, a statement of any new matter constituting a defense or counterclaim, in ordinary and concise language, without repetition. [R. S. 1899, sec. 604.]

When new matter is relied upon in defense or in evidence, it must be set up in the answer. Under the old system, by pleading the general issue, everything was open to proof which went to show a valid defense. But the Practice Act, which has substituted an answer for the general issue, and requires a statement of any new matter constituting a defense, in addition to a special denial of the material allegations of the petition intended to be controverted, has worked a complete and total change in the principles of pleadings. The defendant, by merely answering the allegations in the plaintiff's petition, can try only such questions of

fact as are necessary to sustain the plaintiff's case. If he intends to rely upon new matter which goes to defeat or avoid the plaintiff's action, he must set forth in clear and precise terms each substantial fact intended to be so relied on. .It follows that whenever a defendant intends to rest his defense upon any fact which is not included in the allegations necessary to the support of the plaintiff's case, he must set it up according to the statute, in ordinary and concise language, else he will be precluded from giving evidence of it upon the trial. [Northrup v. Mississippi Valley Ins. Co., 47 Mo. 443.]

This court, in the case of Musser v. Adler, 86 Mo. l. c. 449, in discussing this question, said: "The character of the defense thus interposed at the close of the trial by prayers for instructions, was to admit that the services were rendered, but to avoid a recovery on the ground that they were illegal and contrary to public policy. Such a defense should be pleaded, and an intelligent issue made thereon. Here it is very clear that the question was raised incidentally, and that, too, at the close of the trial. It is not enough that evidence may appear tending to establish facts which, if pleaded, would defeat a recovery. The general denial puts in issue the facts pleaded in the petition, *not the liability*. The facts, from which the law draws the conclusion of non-liability, must be pleaded in the answer when they are not stated in the petition." This same case says: "This defense, so far as pleading is concerned, is not unlike that of champerty, gaming, usury and the like."

Therefore, it follows that the referee and trial court erred in permitting defendant to interpose the defense of champerty, when it was not set forth in the petition or answer. [Moore v. Ringo, 82 Mo. 473.]

The defendant does not seriously controvert the correctness of the above rule, but seeks to escape the

effects thereof by invoking another equally well established rule, which declares that when the contract is offered in evidence and its immorality and illegality appear on its face, a recovery should be denied even though the answer is a general denial. [McDearmott v. Sedgwick, 140 Mo. 172.]

The rule last stated does not apply to the facts of this case, because the contract between the plaintiffs and defendant provides that P. F. Kelerher & Co. shall pay one-half of any and all reasonable expenses or sums of money that may be *necessary and proper* for them to expend to insure the successful prosecution of the suits. There are many necessary and proper expenses an attorney may contract to pay in connection with the prosecution of a law suit. Even "relatives and friends of the party may often with great propriety interfere, and not only advise litigation, but also furnish the means to carry it on." [Euneau v. Rieger; 105 Mo. 1. c. 681.]

In the face of the express terms of the contract, we cannot say the plaintiffs agreed to pay any part of the costs of the suit which might be instituted by Henderson & Shields against Knox county. Said contract on its face is not champertous. But the defendant contends that even though that be true, yet as the contract sued on refers to the contract between Henderson & Shields and the bondholders and provides that the suits are to be instituted and prosecuted according to the terms of the last-mentioned contract, they should be read together, as one entire contract, as if the latter had been literally copied into the former. For the argument's sake concede that to be true, which we believe correct, in construing the contract then we have one contract which contains two provisions regarding the payment of the costs and expenses of the contemplated litigation. One states that the plaintiffs

shall pay one-half of any and all *reasonable* expenses or sums of money that may be *necessary and proper* for them to expend to insure the successful prosecution of said suits, and the other that in case of loss of any such suit, Henderson & Shields obligated and bound themselves to pay *all costs of whatever nature.* If it was the intention of the parties that Kelerher & Co. and Henderson & Shields should each pay one-half of *all costs of whatever nature,* which might accrue in the prosecution of the suits, why did the same contract specifically state that Kelerher & Co. should pay one-half of all *reasonable* expenses or sums of money that might be *necessary and proper?*

It is a well-settled rule that, in construing a contract, if possible it should be construed so as to give all of its words and provisions full force and effect. Applying this rule to the facts of this case, it seems clear to us that it was the intention of all parties to the contract that Kelerher & Co. were to pay one-half of all legitimate expenses Henderson & Shields might lawfully pay or incur. If Henderson & Shields went further and contracted with the bondholders to pay *all costs of whatever nature,* which might be incurred in the prosecution of the suits, that is their fault, and should not by construction or implication be visited upon the plaintiffs in the face of their express contract to pay one-half of all *proper and reasonable* expenses. We are clearly of the opinion that the mere reference made by the contract sued on to the contract of Henderson & Shields did not have the legal effect of obligating Kelerher & Co. to pay any of the costs of the litigation. Even though the law of champerty was not in force in this State, it could not be seriously contended that Kelerher & Co. would in any manner be bound by the contracts in evidence to the bondholders to pay any costs which might have accrued in said litigation.

All their rights, duties and obligations were fully stated in the contract sued on. The reference to the other contract and receipt was made simply for the purpose of furnishing written evidence of the amount of the bonds and coupons deposited by the bondholders with Kelerher & Co., and to show that the bondholders had accepted the Henderson & Shields proposition. For this reason it was not absolutely necessary for plaintiffs to plead the contract with the bondholders, because it is more in the nature of evidence in so far as Kelerher & Co. are concerned than a contract. Under the facts of this case we believe it would have been proper to have pleaded it, yet we do not think it necessary to do so. •

II. Counsel for plaintiffs next contends that the law of champerty does not exist in this State. We are unable to concur with the learned counsel upon that proposition. [Duke v. Harper, 66 Mo. 51.]

III. Counsel for defendant in his oral argument before this court contended that even though the contract sued on was not champertous, yet as it obligated defendant to pay fees which were earned and collected under and in pursuance of a contract which was clearly champertous, the courts should not lend their aid to the enforcement of that obligation. To that proposition we cannot assent. In order to reach that conclusion we would be compelled to hold that the fees so collected are tainted with champerty and illegality. The law does not impress upon the subject-matter of the contract its stamp of condemnation, but upon the contract itself. Unless the plaintiffs' contract, by which they seek to enforce their right, is infected with champerty, we see no reason why this suit may not be maintained, though such a contract exists between the defendant and the bondholders. It is time enough to turn a party out of court when he asks the aid of a

court to enforce such a contract. [Euneau v. Rieger, 105 Mo. 682; Roselle v. Beckemeir, 134 Mo. 380.]

The St. Louis Court of Appeals has held that the assignee of a promissory note could sue the maker and recover thereon, even though the contract of assignment was champertous. While this may be carrying the rule a little far, yet it shows to what great length the courts will go in order to protect the rights of the parties. [Bick v. Overfelt, 88 Mo. App. 140.]

The fact that certain collateral portions of the contract or transaction which is before the court is tainted with illegality will not defeat a recovery upon the other provisions of the contract, which in themselves give a complete cause of action, without the assistance of the infected portions. [Vette v. Geist, 155 Mo. 27.]

## SECOND.

I. We will now consider the defendant's appeal.

The answer set up several affirmative defenses and counterclaims. Under our code such defenses and counterclaims stand precisely upon the same footing as the petition does. [R. S. 1899, sec. 4499.]

When there is no evidence introduced, the proper practice is to dismiss the proceedings. [Clowser v. Noland, 72 Mo. App. 217; Nordmanser v. Hitchcock, 40 Mo. 179; Wright v. Salisbury, 46 Mo. 26.]

II. The defendant also contends that there was not sufficient proof of the identification and execution of the contracts read in evidence. We have carefully gone over the evidence upon these points and are satisfied there was sufficient evidence for the jury's consideration.

III. Defendant also makes the point that the appeal of the plaintiffs should be dismissed because the

abstract of their record filed in this court is fatally defective. After a careful consideration of this point we find that there is no substantial merit in it.

For the errors hereinbefore stated, the judgment against the plaintiffs, and the judgment against the defendant, are reversed and remanded.

All concur, except *Lamm, J.*, who dissents.

IN BANC.

PER CURIAM.—Upon a rehearing of this cause by the Court in Banc, the opinion of WOODSON, J., in Division No. 1, is adopted, and the judgment for plaintiffs and the judgment for defendant are reversed and remanded for new trial.