EVELYN MERTZ BOETTCHER; EDWARD L. MERTZ; BETTY CLARK GRANDI; JEWELL CLARK LEWIS; BARBARA CLARK THOMAS; CAROLYN CLARK FARGO, *Plaintiffs,* v. CATHERINE W. CRISCIONE, *Appellant;* MAX WYMAN, *Appellee;* GEORGE J. LITTLE and HELEN H. LITTLE, Intervenors.

No. 40,126

MAX WYMAN, *Appellee,* v. CATHERINE W. CRISCIONE, *Appellant.*

(299 P. 2d 806)

Opinion filed June 30, 1956.

*Ora D. McClellan,* of Wichita, argued the cause, and *Gerald L. Michaud, Harry E. Robbins, Jr., Carol V. Creitz,* and *John B. Wooley,* all of Wichita, were with him on the briefs for the appellant.

*Don Wyman,* of Hutchinson, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: These are consolidated appeals taken from orders of the trial court sustaining motions to strike allegations of appellant's first amended answers. In case No. 40,125 the first amended answer was filed in response to appellee's intervening petition in a partition suit originally filed by others and in case No. 40,126 it was in response to appellee's petition to quiet title and for partition.

There were other parties in the original action in case No. 40,125 but the consolidated appeals involve only Max Wyman, who will hereafter be referred to as plaintiff, and Catherine Criscione, who will be referred to as defendant. Due to the similarity of the first amended answers, they will be herein treated as one.

Summarized, the salient facts are that Laura C. Woodford, a widow and resident of Hutchinson, Reno county, died intestate

on February 21, 1947, leaving no surviving children; on September 20, 1949, defendant was contacted at her home in Washington, D. C., by George J. Little and his wife; they presented her with a card, which is later set out herein, and stated to her that she was an heir of the Laura C. Woodford estate of which fact they had information as genealogists.

Two contracts, later set out herein, were presented to and executed by defendant. In the first of these she employed the Littles as genealogists to assemble evidence to perfect her heirship, and in the second she retained plaintiff, an attorney of Hutchinson, to present her claim in the probate court of Reno county. These contracts read as follows:

"Washington, D. C.
"September 20-1949

"I hereby authorize Geo. J. Little and Helen Little (Little & Little) as genealogists to make research and assemble evidence and deliver same to attorney Max Wyman, Hutchinson, Kansas, to prove my claim as an heir of Laura Woodford, deceased, and agree to pay them one-fourth of any recovery made from said estate.

"In event I am not declared to be an heir and recover an interest, I am to be to no expense whatever."

"Washington, D. C.
"September 20-1948

"I hereby authorize and employ Max Wyman of Hutchinson, Kansas, as my attorney to prosecute my claim as an heir of the Estate of Laura Woodford, deceased, and in the event of recovery of any money, interest or property— I agree to pay said attorney an equal of one fourth of all monies, interest and property recovered to me. And authorize the Administrator of said estate to pay him said quarter part of my interest upon recovery of same.

"It is understood that I shall not be obligated to pay said attorney anything unless I am declared to be an heir and recover as such."

It will be noticed that the Little contract bore the year date of 1949, which is correct notwithstanding the year date of *1948* on plaintiff's contract.

In the probate proceedings and later on appeal in the Reno district court, defendant was determined to be an heir of the Woodford estate and thereby received $5,402.32 in cash and an undivided 36/96th interest in a large amount of real estate. The check for $5,402.32 was delivered to plaintiff and remitted *in toto* to defendant. Plaintiff represented defendant throughout the mentioned probate and district court proceedings wherein other heirs of the Woodford estate were also determined. These other heirs

subsequently filed suit to partition the real estate, which was resultingly sold, but defendant's share of the proceeds was held by the court subject to further order.

Plaintiff, as intervenor in the partition action, filed a motion and petition claiming by reason of his contract of employment an undivided one fourth interest in defendant's share in the cash, rents, profits and proceeds realized from the Woodford estate and further plaintiff asked for an accounting and that the judgment be a lien and that it be foreclosed.

Plaintiff also filed an independent attachment and partition action on the same grounds and asked the same relief against defendant as is set out in the preceding paragraph.

In response to these actions of plaintiff, defendant filed her answer. Plaintiff filed motions to strike and to make definite and certain, which were sustained. Defendant then filed her first amended answer, the allegations of which, like her answer, were based on the same theory that the contracts were champertous, void and unenforceable as against public policy but she set out in much more detail the facts upon which she relied as constituting champerty. Plaintiff again filed motions to strike and to make definite and certain. The trial court's order sustained these motions and this appeal by defendant from those adverse rulings followed.

That part of plaintiff's motion to make definite and certain which was sustained by the trial court required defendant in the first paragraph of her first amended answer to set forth and describe the facts upon which she sought to prove that George J. Little was the agent of plaintiff, and also to set forth in her fifth and final paragraphs of said amended answer any additional grounds on which she contended the contract with plaintiff was void.

The trial court sustained plaintiff's motion to strike the following portions of defendant's first amended answer:

"That subsequent to the signing of said purported contracts, as aforesaid, and on the same day at other times subsequent thereto, the said George J. Little on his own behalf and as agent of the said Max Wyman, stated to the defendant that the following language in the Wyman contract:

" 'It is understood that I shall not be obligated to pay said attorney anything unless I am declared to be an heir and recover as such  .  .  .,'

and the following language in the Little contract:

" 'In event I am not declared to be an heir and recover an interest, I am to be to no expense whatever  .  .  .,'

meant that the said Littles and the said Wyman would save defendant harmless from any costs and secure all evidence necessary to prove defendant's claim as an heir of Laura Woodford, deceased; and the said Little acting in his own behalf and as agent for the said Wyman, orally promised to do so; that in consideration for said promise defendant permitted the said Little to take said contracts as the said Little stated to defendant that he wanted to get the contracts in the mail that evening.

"After defendant signed the Little and Wyman contracts, the said Littles informed defendant as to the Laura Woodford estate and stated that defendant was entitled to a one-half interest in said estate; a true and correct copy of the said contract signed by defendant for the said Max Wyman is attached hereto, marked 'Exhibit A' and made a part hereof; that a true and correct copy of the said contract signed by defendant for the said Littles is attached hereto, marked 'Exhibit B' and made a part hereof.

"III.

"On September 26, 1949, the said Max Wyman, with full knowledge of the means and methods used to obtain his said purported contract and the promise made subsequent thereto, relating to saving defendant harmless from all costs and expenses whatsoever, confirmed and ratified said contract in writing; a true and correct copy of said writing is attached hereto, marked 'Exhibit C' and made a part hereof.

"IV.

"At all times herein mentioned the said George J. Little was a member of the bar of the State of Kansas having been duly admitted to practice law in the State of Kansas by the Supreme Court of said state; that said Little presented his professional card to defendant which card read as follows:

"George Little                                    "Helen H. Little
  "Attorney                                        "Genealogist
                        "LITTLE & LITTLE
                           "Genealogists
                   "Tracers of Family Pedigrees
                        "Heirs—Estates
"1244 South Broadway                              "Wichita, Kansas"
"Phone 2-7788

The defendant appealed from the trial court's order and assigned seven errors by that court which can be briefly presented by grouping them as follows: The trial court erred (1) in sustaining the motion to make definite and certain; (2) in sustaining the motion to strike separate parts of defendant's first amended answer; and (3) in sustaining the motion to strike in toto, which was thus tantamount to sustaining a demurrer to defendant's first amended answer.

We are first met by a motion by plaintiff to dismiss the appeal because the amended answer filed by defendant was attacked by a motion to strike, which was sustained by the trial court, and that

more than sixty days elapsed between the time of that order and this appeal. Further, plaintiff contends the first amended answer presented no new matter from that contained in the answer and no appeal was taken from the order of the trial court sustaining the motion to strike from the answer. We will answer this contention. Without setting out the answer and the parts stricken, it is sufficient to say that not only were the allegations stricken from the first amended answer different from those allegations stricken from the answer, but the trial court struck some additional allegations from the first amended answer which were identical to but were not stricken from the answer. In view of the foregoing, the motion to dismiss is not good.

It may be well to call attention also to the fact that after sustaining the motion to strike from the answer, the trial court granted defendant twenty-five days from March 7, 1955, to plead further.

An order sustaining a motion to strike is appealable as a final order if it determines any part or all of a lawsuit or as applied to an answer, if it in effect deprives the defendant of a meritorious defense which, if supported by evidence, would defeat plaintiff's cause of action, or a part thereof. (G. S. 1949, 60-3302; 60-3303; *Sheahan v. Kansas Power & Light Co.,* 172 Kan. 399, 401, 402, 241 P. 2d 515; *Johnson v. Killion,* 179 Kan. 571, 297 P. 2d 177.)

The next question thus resolves into whether the defense is meritorious and would defeat a part or all of plaintiff's cause of acton. Our statute (G. S. 1949, 21-745) provides, in part, as follows:

"Every person who shall be convicted of being a common barrator shall be punished . . ."

Under this statute common barratry and champerty have been synonymously and generally denominated an offense which is generally defined as that of frequently exciting and stirring up quarrels either at law or otherwise. Whether champerty and barratry is in violation of public policy cannot be determined by any one rule or statement; it turns largely on the facts and circumstances of each case. (*Stewart v. Fourth Nat'l Bank,* 141 Kan. 175, 180, 39 P. 2d 918.) See, also, 10 Am. Jur., Champerty and Maintenance, § 5.

Generally, in order to constitute the essential elements of champerty, plaintiff, having otherwise no interest in the subject matter of defendant's claim as an heir of Laura Woodford, deceased,

made an agreement to defray, in whole or in part, the expenses of the litigation of defendant's claim whereby the fruits of the litigation would be divided with one fourth going to plaintiff. The time of plaintiff's entering into the contract is immaterial as is the fact of whether the litigation is pending, or to be commenced, so long as such litigation is contemplated.

By the contract between plaintiff and defendant if defendant recovered, plaintiff would receive a one-fourth interest in whatever land, money, or other property she received by reason of being adjudged an heir of Laura Woodford, deceased, in the probate of the estate, but if defendant was not determined to be an heir and received nothing, then plaintiff could recover nothing because defendant in that event was not obligated to pay him anything. This would prohibit plaintiff from collecting any expenses or costs of the litigation which he would have personally paid in the prosecution of defendant's claim. (14 C. J. S., Champerty and Maintenance, § 1(a), § 3.)

Plaintiff contends the contract in question is not one in champerty and, therefore, void as against public policy, but is only an ordinary contract for a contingent fee. We cannot agree with this contention because in such a contract even though a client did not prevail in the contemplated litigation, the attorney may nevertheless recover any costs or expenses he has paid out of his own pocket. However, under this contract plaintiff could recover nothing if defendant failed to prevail and to recover by being adjudicated an heir of and sharing in the estate of Laura Woodford, deceased. Therefore, this could not be an ordinary contract for a contingent fee.

As to the contention raised on this appeal regarding the question as to whether the Littles were the agents of plaintiff, we will dispose of that in short order. From the letter of plaintiff dated September 26, 1949, addressed to defendant it is clear that he accepted the arrangement of attorney and client procured by him as a result of the longhand contract above set out and while ratifying and receiving the fruits thereof, he also, as a matter of law, undertook all the liabilities and burdens involved. Plaintiff either had to repudiate the entire transaction or accept it as a whole. (*Edwards County Comm'rs v. Simmons*, 159 Kan. 41, 55, 151 P. 2d 960.) The relationship of attorney and client is a personal one and should always be conducted and treated as such.

In an answer a defendant may allege as many grounds of defense as he may have (G. S. 1949, 60-710) and it appears from the record in this case that this is what defendant did. The trial court was not warranted in striking allegations of a defense from the first amended answer because it anticipated that defendant might not be able to prove that defense. Defendant is certainly entitled to the opportunity of presenting her evidence in support of such defense. (*State, ex rel., v. Leopold,* 172 Kan. 371, 374, 240 P. 2d 138.)

Plaintiff claimed that the defense alleged was based on fraud and as a result was barred by the statute of limitations. Without setting out the provisions of those statutes, we wish merely to state that a cause of action in a petition so barred cannot be used to obtain affirmative relief; however, it may be used as a pure defensive matter in an answer. (*Crumrine v. Cummings,* 172 Kan. 290, 240 P. 2d 463.)

In view of what we have said it is not necessary to cover other matters raised in the record and we conclude that the allegations of the first amended answer sufficiently set out the elements of champerty or common barratry as a defense and the trial court erred in striking such allegations therefrom.

The judgment on the motions to strike is reversed in its entirety and the trial court is directed to reinstate the stricken allegations of the first amended answer in each case.