David H. SCHNABEL, Appellant,

v.

TAFT BROADCASTING COMPANY,
INC., a corporation, et al.,
Respondents.

No. KCD 27310.

Missouri Court of Appeals,
Kansas City District.

July 7, 1975.

Rehearing Denied Aug. 5, 1975.

Max Von Erdmannsdorff, Von Erdmannsdorff & Kuhlman, Howard F. Sachs, Donald W. Giffin, Kansas City, for respondent David J. Madison.

Reed O. Gentry, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for respondent Willard.

John M. Kilroy, Richard W. Noble, Kansas City, for respondents Taft Broadcasting Company, Inc. and McClay; Shughart, Thomson & Kilroy, Kansas City, of counsel.

Howard F. Sachs, Donald W. Giffin, Kansas City, for respondents Wormington and Bolton and additional attorneys for respondents Taft Broadcasting Company, Inc. and McClay.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

SHANGLER, Judge.

The plaintiff David H. Schnabel brought a petition for actual and punitive damages, framed in two counts, one for champerty and the other for malicious prosecution of a libel action in the courts of Kansas. The defendants moved the dismissal of both counts or for summary judgment. The trial court sustained the motion to dismiss both counts as to all defendants on the asserted ground that both counts failed to state claims for relief and that any claim based upon allegations of malicious prosecution were barred by the one year Kansas statute of limitations, K.S.A. § 60–514, given effect in Missouri by § 516.190, RSMo Supp. 1975, V.A.M.S. The defendant Taft Broadcasting Company asserted the additional ground for dismissal that the claim of plaintiff related to conduct arguably protected or prohibited by the National Labor Relations Act and was therefore pre-empted by the jurisdiction of the National Labor Relations Board.

■ On a motion to dismiss, the sufficiency of a petition is construed liberally and all facts properly pleaded are taken as true and are accorded every reasonable intendment as a valid statement of a claim. *Hall v. Smith,* 355 S.W.2d 52, 55[1–5] (Mo. 1962). A petition, although imperfectly or defectively stated, will be sustained if the allegations invoke substantial principles of law which may entitle the pleader to relief. *Ingalls v. Neufeld,* 487 S.W.2d 52, 54[1–4] (Mo.App.1972). If it clearly appears from the face of the pleading that a cause of action is barred by limitations, a motion to dismiss, even without specification of grounds is properly sustained. *Household Finance Corporation v. Avery,* 476 S.W.2d 165, 168[6] (Mo.App.1972).

Count I of the petition undertakes to plead a cause of action in champerty on these allegations:

The defendant Taft Broadcasting Company, Inc., owned and operated the WDAF radio and television stations in Kansas City, Missouri, and was a party to a collective bargaining agreement with a local of the American Federation of Television and Radio Artists [AFTRA], the bargaining agent for the professional employees of the stations. Prior to and after the October 1, 1965, termination date of the agreement, Taft Broadcasting through Robert J. Wormington and Lewis D. Bolton, managers of the stations, and John L. McClay, Executive Vice-President, negotiated with AFTRA for a new contract. Attorney James R. Willard represented Taft Broadcasting throughout these negotiations. The bargaining proved fruitless, so that the contract was terminated and on December 12,

1965, the members of the union went on strike.

The plaintiff Schnabel was employed as the Executive Secretary of the Kansas City local of AFTRA. After commencement of the strike, members of the union undertook to picket the WDAF radio and television facilities and to engage in other activities— including publication of a newsletter—calculated to inform the public, advertisers, consumers, government officials and other unions of the nature of their dispute with the management.

The day following the commencement of the strike, WDAF hired defendant David J. Madison and two others to replace members of the AFTRA who were then on strike. In the December 28, 1965 issue of the union newsletter appeared the statement:

> DAVID MADISON has an interesting background. His personal life has been so fouled up, the only regular work he seems to be able to find is as a professional strike-breaker. His experience during the METROMEDIA strike apparently has been his only preparation in the broadcasting field. Watching him butcher the television news, or listening to him slaughter the King's English as a DJ makes one wonder how any advertiser could possibly consider their money well spent with DAVE MADISON "delivering the goods".

When he arrived at the WDAF facilities the next day, Madison was given a copy of the newsletter by the program director of the radio station. Madison was then called to the office of defendant Wormington, station manager for WDAF TV, who discussed the newsletter and any legal remedies available to Madison, and indicated that Madison could retain the labor counsel representing Taft Broadcasting in its dispute with AFTRA to file suit against plaintiff and others for the alleged defamation. The petition then alleged that, during this meeting, Wormington, on behalf of Taft Broadcasting, entered into an agreement with Madison to pay all attorneys fees and costs and expenses of litigation incurred in the suit against plaintiff and other members of AFTRA. The petition alleged that this agreement, which did not obligate Madison to reimburse Taft Broadcasting for any of these outlays was wrongful and champertous.

As suggested by Wormington, Madison met with attorney Willard and, as a result of this conference, filed suit in Johnson County, against plaintiff and twenty-five others, individually and as representatives of the AFTRA class. It was alleged that defendants Willard, Wormington, Bolton and McClay conspired to enter into the champertous agreement on behalf of Taft Broadcasting which thereafter expended sums of money on behalf of Madison in support of his suit.

The petition pleaded that an objective of the conspiracy was to use the lawsuit as a means of bringing pressure to bear upon the plaintiff and AFTRA to terminate the strike. Accordingly, it was alleged that Taft Broadcasting for that purpose sought to obtain from Madison express, written control of the lawsuit, but was refused. Madison was dismissed from employment by Taft Broadcasting on March 25, 1966, and on April 18, 1966, the strike was terminated. Madison, however, continued to prosecute the action against the plaintiff and AFTRA until he voluntarily dismissed the action with prejudice on April 18, 1969.

The petition alleged benefit to Taft Broadcasting from the champertous agreement and maintenance of the Madison action by allowing that conspirator the use of the lawsuit to coerce AFTRA to terminate the strike; that defendants Wormington, Bolton and McClay derived benefit through their employment with Taft Broadcasting; that attorney Willard received fees and compensation from the action, and that Madison derived the benefit of a cause of action without risk of expense or loss.

The plaintiff alleged damage from the wrongful acts of the defendants in that the strain of his efforts as Executive Secretary

of AFTRA in the defense of the action caused a seizure and physical injury to his person, and alleged the further damage of lost employment because the defense of the lawsuit had depleted the AFTRA funds.

Count II of the petition by reference incorporates the allegations of Count I and further alleges that the defendants, acting through Madison, maliciously conspired to and did file the defamation action against plaintiff with intent to injure him and without cause. The pleading also alleges that the defendants actively encouraged and supported the bringing of the action with the purpose of coercing plaintiff and AFTRA to end the strike; that the action was brought maliciously and without probable cause because the statements made in the newsletter concerning Madison were in fact true and made with a qualified privilege since they were directed at Madison as a public figure. The petition cited the voluntary dismissal of the action by Madison as a termination of the proceedings in favor of the plaintiff.

The validity of Count I as a pleading is to be determined by whether the allegations invoke substantial principles of the law of champerty as to entitle plaintiff to relief.

The doctrines of champerty and maintenance were developed at the common law to "prevent officious intermeddlers from stirring up strife and contention by vexatious and speculative litigation which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of the law". 14 C.J.S. Champerty and Maintenance § 3; *Curry v. Dahlberg,* 341 Mo. 897, 110 S.W.2d 742, 748[9–11], 112 S.W.2d 345 (banc 1937). Maintenance is defined as "an officious intermeddling in a suit which in no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it". *Moffett v. Commerce Trust Company,* 283 S.W.2d 591, 596[3, 4] (Mo.1955). Champerty, a species of maintenance, consists of an agreement under which a person who has no interest in the suit of another under-takes to maintain or support it at his own expense in exchange for part of the litigated matter in the event of a successful conclusion of the cause. *Watkins v. Floyd,* 492 S.W.2d 865, 871[3] (Mo.App.1973). As delineated, the law of champerty and maintenance is in force in Missouri [*Curry v. Dahlberg, supra,* 341 Mo. l. c. 748, 110 S.W.2d 742], and in Kansas as well. *Boettcher v. Criscione,* 180 Kan. 39, 299 P.2d 806, 811[5] (1956).

The respondents do not cavil at these general principles but contend, on the authority of *Security Underground Storage, Inc. v. Anderson,* 347 F.2d 964 (10th Cir. 1965), that an action for damages for either maintenance or champerty no longer exists in favor of a third person not a party to the unlawful agreement. In *Security,* an action brought by attorneys to recover for services rendered, the defendant counterclaimed for damages on allegations that one attorney had maliciously instigated and promoted the filing of a lawsuit against the defendant by a third party and had advanced substantial funds for that purpose. The court, citing *Boettcher,* and other Kansas decisions, held that such an action could not be maintained [l. c. 969]:

> It is generally accepted that a cause of action for damages arising out of the common-law doctrine of champerty and maintenance as it was then known, is not now recognized. . . . The decisional law of today dealing with the subject usually involves the validity of contracts asserted to be violations of the doctrine. . . . This does not mean, however, that there is no existing remedy for such conduct under modern law. As an outgrowth of the ancient rule the existing remedies are through tort actions such as malicious prosecution, abuse of process, and wrongful initiation of litigation.

The appellant contends, however, that a separate cause of action for damages, as known at common law, subsists in the courts of Missouri, and as support cites *Breeden v. Frankfort Marine Accident &*

*Plate Glass Ins. Co.,* 220 Mo. 327, 119 S.W. 576 (banc 1909). In that case, an action for damages on allegations of maintenance was brought against a liability insurer by a party who had recovered judgment earlier against the insured. The plaintiff alleged that the insurer, which had defended the insured under the policy, was guilty of maintenance for interjection into a lawsuit in which it had no legitimate interest. The principal opinion [Woodson, J., l. c. 589–591] held that liability insurance was void as against public policy, that the insurer therefore had no interest in the defense, and was only an officious intermeddler within the doctrine of maintenance. That opinion held, further, that the common law remedy of damages resulting from maintenance was available in our courts. A settlement which the plaintiff had concluded with the insurer, however, was held to be a complete bar to his recovery.

Five of the participating judges, however, concurred only in the result reached while joining in an opinion by Judge Lamm [l. c. 608–610] which took issue with the pronouncements of the principal opinion. In that concurrence, a majority joined in the opinion that liability insurance was not void as against public policy and that the insurer therefore had an interest under its policy in defending the lawsuit. And most pertinently to the issues here, observed [l. c. 606]:

> [T]hat doctrine, as announced anciently, goes now with a grain of salt; for it must be understood that the rigors of the rules of the very old common law in that regard have been tempered and mellowed in modern times. The modern doctrine takes out of the rule against maintenance those who interfere in litigation in which they have, or honestly believe they have, an interest.

No case since, either in Missouri or Kansas, has passed upon the right to bring an action for damages resulting from champerty or maintenance. That is because, as a rule, the doctrines and their principles have been laid down in judgments upon defenses to actions in which a defendant has sought to be delivered from the obligation of a contract affected with the illegality of champerty or maintenance. *Breeden v. Frankfort Marine Accident & Plate Glass Ins. Co.,* supra, l. c. 596; *Kelerher v. Henderson,* 203 Mo. 498, 101 S.W. 1083, 1087 (banc 1907).

■ Although the common law action of maintenance or champerty, *eo nomine,* is rare in modern times, such conduct now finds remedy in abuse of process, wrongful initiation of litigation and malicious prosecution actions.[1] *Security Underground Storage, Inc. v. Anderson,* supra, l. c. 969; Restatement of Torts, § 674, Wrongful Initiation of Civil Proceedings. Our conclusion that Count I fails to state a cause of action assumes for the purpose of that determination, however, that the ancient remedy for damages subsists.

■ The appellant assumes throughout that the propriety of Count I as a pleading for damages in champerty is controlled by the state in which the contract was formed [Missouri], while respondents contend that the law of the state where the champertous suits were to be brought [Kansas] governs the question. Whether under the traditional rule of conflicts, espoused by appellant, which applies the law of the state where the champertous suit was brought [*Roller v. Murray,* 107 Va. 527, 59 S.E. 421, 427[8] (1907)], or the center of gravity theory which applies the law of that state which has the most significant relationships with the proscribed conduct [*Gonzalez y Barredo v. Schenck,* 287 F.Supp. 505, 526[8] (S.D.N.Y.1968), rev'd on other grounds, 428 F.2d 971 (2d Cir. 1970)], on this pleading, the law of Kansas determines whether a claim for relief was stated. These contentions, in any event, are without efficacy because the

---

1. Reference to champerty and maintenance is completely lacking in the works of such pre-eminent didacts on torts as Prosser [Torts, 4th Ed. 1971]; Harper & James [Law of Torts, 1956]; Cooley [Torts, 4th Ed. 1932] and Morris [Torts, 1953].

courts of both jurisdictions recognize the constitutive elements of champerty as (1) an agreement by one with no interest in a suit of another (2) to support or maintain the litigation at his own expense (3) in exchange for a part of the litigated matter in the event of a successful conclusion of the cause. *Watkins v. Floyd*, 492 S.W.2d 865, 871[3] (Mo.App.1973); *Boettcher v. Criscione*, 180 Kan. 39, 299 P.2d 806, 811[5] (1956).

Count I fails against the defendant Willard because, even if the pleading can be understood to allege a contingent fee contract, there is no allegation that attorney Willard undertook to pay or protect the client from payment of the costs and expenses of litigation, an essential element of champerty properly pleaded. *Mytton v. Missouri Pac. R. Co.*, 211 S.W. 111, 113[4, 5] (Mo.App.1919); *Boettcher v. Criscione, supra*, l. c. 811[6].

Count I fails against the defendant Madison because the doctrine of champerty embraces only strangers to the action, not a party. 14 C.J.S. Champerty and Maintenance § 1.

Count I fails against the remaining defendants, Taft Broadcasting, McClay, Wormington and Bolton because the pleading lacks the essential allegation that these defendants were to share in the subject matter of the suit, if successful. The appellant concedes that these defendants did not anticipate the benefit of any recovery, but contends that the pleading requirement of champerty is met by allegations that the benefit of Taft Broadcasting was the termination of the strike and the benefit to McClay, Wormington and Bolton was the expectation of employment perquisites. That argument is a blandishment to enlarge the scope of champerty, a concept which, rather, has been narrowed, tempered and mellowed in modern times. The doctrine as now practiced takes out of the rule those who interfere in litigation in which they have, or honestly believe they have, an interest. *Breeden v. Frankfort Marine Ac-*

*cident & Plate Glass Ins. Co., supra*, l. c. 606. The matter of the termination of the strike was a matter of obvious vital economic interest to these defendants. The contract as pleaded between them and Madison was not for sordid gain or speculation, but a statement of legitimate and lawful interest. See, *Curry v. Dahlberg*, 341 Mo. 897, 110 S.W.2d 742, 748[9–11] (banc 1937); *Boettcher v. Criscione, supra*, l. c. 811[3, 4].

Count II of the petition alleges that Madison, at the behest of the other defendants, and without probable cause to believe the action was proper, but with malicious intent to injure, brought a libel action against the plaintiff in the courts of Kansas, that the action was terminated by voluntary dismissal, and that plaintiff suffered damages as a result.

The respondents concede that Count II states a valid claim for malicious prosecution but contend, nevertheless, that the action is barred by the one year limitation period of K.S.A. § 60–514 given effect to the litigation by the provisions of the Missouri borrowing statute, § 516.190, RSMo Supp. 1975:

> Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state.

The appellant asserts that choice of law principles apply to determine where the action for malicious prosecution *originated* for the purposes of the application of § 516.190, while the respondents contend that a choice of law question is not presented, but that a cause of action *originates* where it *accrues*.

The effect of the Missouri borrowing statute is to impose an additional limitation on the right to sue so that if the cause of action is barred by the laws of the state in which it originated, the suitor may not maintain the action in the courts of Missouri. *Farthing v. Sams*, 296 Mo. 442, 247 S.W. 111, 112 (1922). Within the context of the

statute, *originated* has been accorded the meaning *accrued*. *Christiner v. Chicago, R. I. & P. Ry. Co.,* 228 Mo.App. 220, 64 S.W.2d 752, 754[1–4] (1933); *Frizzell Grain & Supply Co. v. Atchison T. & S. F. Ry. Co.,* 201 S.W. 78, 80[3] (Mo.1918); *Alropa Corporation v. Smith,* 240 Mo.App. 376, 199 S.W.2d 866, 869[3, 4] (1947).

The appellant asserts alternatively either under the traditional *lex loci delicti* or most significant contacts choice of law principles, the substantive cause of action for malicious prosecution originated in Missouri and therefore the borrowing statute does not govern. We do not delineate the contending arguments because in both Missouri and Kansas a cause of action for malicious prosecution accrues when the litigation complained of is terminated in favor of the defendant. *Euge v. Lemay Bank & Trust Company,* 386 S.W.2d 398, 399[4–6] (Mo. 1965); *Harper v. Cox,* 113 Kan. 357, 214 P. 775, 776[2] (1923). Accordingly, the cause of action for malicious prosecution accrued on April 18, 1969, when Madison dismissed his suit in the courts of Kansas, and, consequently, the action originated in Kansas. No conflict of law question remains, and the effect of § 516.190 is to adopt as our own the provisions of the foreign statute of limitations. *Bowling v. S. S. Kresge Company,* 431 S.W.2d 191, 193[1] (Mo.1968); *Gates v. Trans World Airlines,* 493 S.W.2d 668, 670 (Mo.App.1973). Under the one year limitation of K.S.A. § 60–514, borrowed by § 516.190, therefore, Count II of the petition filed on April 14, 1971, was not timely brought.

The dismissal was proper as to both counts. We do not reach the additional grounds for judgment asserted by the respondents.

The judgment is affirmed.

All concur.